CITY OF MESQUITE and Mesquite Independent School District, Appellants,

v.

Eblen S. MALOUF, Individually and as Trustee, Appellee.

No. 8422.

Court of Civil Appeals of Texas, Texarkana.

June 14, 1977.

Rehearing Denied July 19, 1977.

Elland Archer, City Atty., Dwight H. Moore, Asst. City Atty., Mesquite, for appellants.

Ralph W. Currie, Dallas, for appellee.

CORNELIUS, Justice.

Appellee Eblen Malouf, individually and as trustee, filed suit against appellants, the City of Mesquite and the Mesquite Independent School District, to recover allegedly excessive ad valorem taxes paid on 247.499 acres of land. Appellee contended that he

was entitled to have appellants assess his land for taxes on consideration of only those factors related to agricultural use, as provided by Article VIII, Sec. 1–d of the Constitution of the State of Texas,[1] but that appellants refused to do so.

Trial was to the court without a jury. The court concluded that appellee was entitled to the agricultural classification and rendered judgment against appellants for the sum of $1,967.18 and other relief.

Appellants have assigned eleven points of error by which they contend primarily that there was no evidence or insufficient evidence that appellee was the "owner" of the land within the meaning of the constitutional provision; that, if appellee could be considered the owner, he held title as trustee, and as such trustee was not a "natural person" within the meaning of the constitutional provision; that the action of the taxing officials in denying the agricultural assessment was supported by substantial evidence and should have been upheld by the trial court; and that there was insufficient evidence that appellee's primary occupation and source of income was that of raising livestock and growing crops, fruits, flowers and other products of the soil under natural conditions as a business venture for profit, as required by the constitutional provision.

Appellee acquired the land on February 26, 1968. The deed was from T. Lewis Jones to Eblen S. Malouf. On March 22, 1968, appellee executed a declaration of trust concerning the property. That declaration is not in the record but on June 15, 1973, appellee and those persons designated as beneficiaries executed the following declaration of trust:

1. "§ 1–d. Assessment of lands designated for agricultural use

Sec. 1–d. (a) All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors rela-

tive to such agricultural use. 'Agricultural use' means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner."

## "DECLARATION OF TRUST

| | |
|---|---|
| STATE OF TEXAS | |
| | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | |

That, by General Warranty Deed dated February 26, 1968 from T. Lewis Jones to Eblen S. Malouf, the undersigned took title to approximately 247.499 net acres of land located near Mesquite, Texas, as more fully described in Exhibit A attached hereto and incorporated herein by reference.

It was understood and agreed at the time of closing that the undersigned was in fact taking title in trust for various individuals who, upon payment of their proportionate part of the cost of acquisition and maintenance of this property, would be entitled to share in the benefits and proceeds derived from the use, rental or sale of all or any part of this property, and by Declaration of Trust dated March 22, 1968 the various beneficial interests were set forth. Subsequent to that sale various of the beneficiaries have sold their interest to other beneficiaries, and it is therefore deemed advisable to execute this new Declaration of Trust, which when fully executed shall stand in lieu of the original Declaration of Trust and establishes the existing beneficial interest in and to the subject of this Trust.

It is further understood that this Declaration of Trust may be placed of record by any of the beneficiaries at any time they might deem it advisable, but notwithstanding the recordation of the Declaration of Trust, Eblen S. Malouf shall continue to hold this property in his name for so long as he might be competent to hold title as a trustee, and the beneficiaries do hereby release and indemnify the Trustee from any and all liability stemming from his acts or failure to act as Trustee.

In the event the undersigned ever should be not qualified to act as trustee the below listed beneficiaries are named as successor trustees in the order that their names appear.

Any person dealing with the undersigned in relation to this property need not obtain the permission, consent, ratification or approval of any of the beneficiaries, but shall be entitled to deal solely with the undersigned who shall have and retain full powers to lease and sell this property, and to take any action not inconsistent with this Declaration of Trust. In the event of sale of all or any part of this property (and the Trustee is given discretionary power to sell all or any part for such consideration as he deems adequate) the undersigned will deliver to the beneficiaries their proportionate part of all proceeds less their proportionate part of any expenses related to the maintenance or sale of this property. This trust shall terminate automatically at such time as all this property is sold and the proceeds distributed.

The beneficiaries of this Declaration of Trust and their respective beneficial interest in this property are as follows:

| | | |
|---|---|---|
| Arthur A. Smith | 20% | — sold to Eblen Malouf, |
| Ronald E. Malouf | 20% | Trustee 6–15–73 E.S.M. |
| Johnie Malouf | 20% | |
| Dennis Malouf | 20% | |
| Julie Malouf | 20% | |

Executed as of the 15th day of June 1973.

/s/ Eblen S Malouf
EBLEN S. MALOUF

The undersigned, being all the beneficiaries under the aforesaid trust do hereby ratify, confirm and approve the above Declaration of Trust:

/s/ Arthur A. Smith
ARTHUR A. SMITH

/s/ Ronald Malouf
RONALD MALOUF

/s/ Johnie Malouf
JOHNIE MALOUF

/s/ Dennis Malouf
DENNIS MALOUF

/s/ Julie Malouf
JULIE MALOUF

THE STATE OF TEXAS ⎱
COUNTY OF DALLAS ⎰

BEFORE ME, the undersigned, a Notary Public in and for said County and State, on this day personally appeared EBLEN S. MALOUF known to me to be the person whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed the same for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 15th day of June, 1973

/s/ E. G. Boyle
Notary Public in and for
Dallas County, Texas
E. G. Boyle"

(Emphasis supplied.)

---

Attached to the declaration is a metes and bounds description of the 247.499 acre tract. The declaration of trust was attached to appellee's original petition and was introduced by him into evidence.

The trial court's judgment was based in part on findings and conclusions to the general effect that the declaration of trust quoted above did not create an existing trust because it was not appellee's intention to vest the beneficiaries with a present beneficial interest in the land; appellee was therefore the owner of the land in his own right rather than as trustee; and appellee met the constitutional requirements of primary occupation and source of income as well as use of the land, and was therefore entitled to the benefits of the agricultural assessment. The trial court also concluded that if the trust did come into existence, appellee was nevertheless entitled, as trustee, to the agricultural assessment.

The trial court's conclusion that the declaration of trust failed to create a present trust was based upon a construction of the declaration and upon appellee's testimony [2] of his intention in signing the declaration.

2. Over appellants' objections, appellee testified as follows:
"Q And the persons named there are your children, I believe?
A My children and a brother of mine, Johnie, and Dr. Arthur Smith who wanted to sell in '73 because he said he was getting old and—

Q All right, did you pay the purchase price for this land that you purchased from Mr. Jones?
A Yes, I did.
Q Did any of your children ever pay any part of the purchase price?
A They are paying on it now. They paid some, but not all of it.
Q How are they doing that?
A Since they came into the business, like Dennis and Ronnie, they are making enough money to meet their payments.
Q Well, do you pay this out on installments? Mr. Jones, did you pay him cash for the land or did you give him a note?
A No, I gave him a note and over ten years.

Q And do you know how much approximately is still owed on the property?
A I think we still have about four years to go.

Q I understand, so, is it your testimony that this purchase from Mr. Lewis Jones has not been completed in the sense that the purchase price has not been paid?
A No, it has not, sir.
Q All right. Have you ever conveyed or deeded any part of this property to your brother or to your children?
A No, sir, I never have. Neither to Dr. Smith.

Q (By Mr. Eades) Getting back to the question, Mr. Malouf, was it your intention to give this property or to transfer this property to your brother and your children if and when they did pay for it as it stated?
A (By the Witness) Yes.
Q And at this time, you have not completed any such gift?
A No, I have not.
Q You have executed no other instrument, deed or anything in writing conveying this property?
A No, I have not.
Q Have you filed any Federal Gift Tax Returns showing any gift?

We have concluded that the trial court erred in finding that the trust was purely executory and never came into existence. The Texas Trust Act provides in part as follows:

"Art. 7425b–7. Requisites of a trust

An express trust may be created by one of the following means or methods:

A. A declaration in writing by the owner of the property that he holds it as trustee for another person, or persons, or for himself and another person or persons; or

. . ."

The declaration signed by appellee and the beneficiaries states that ". . . the undersigned was in fact taking title in trust for various individuals . . ." and that the declaration of trust ". . . establishes the existing beneficial interests in and to the subject of this Trust." Those statements are clear and unequivocal. We regard the additional statement in the declaration to the effect that the beneficiaries, ". . . upon payment of their proportionate cost of the acquisition and maintenance of this property would be entitled to share in the benefits and proceeds derived from the use, rental or sale of all or any part of this property . . ." as merely a condition restricting or deferring the beneficiaries' use and enjoyment of the trust res and the income therefrom. See 76 Am. Jur.2d, Trusts, Sec. 61, p. 310.

If the intention of a settlor is to create, on behalf of the beneficiary, an existing beneficial interest in the trust res, the fact that benefits or enjoyment of the res or the income therefrom are postponed does not defeat the existence of a present trust. Restatement of Trusts, Second, Sec. 26, Comments a and g (1959); Bogert, Trusts & Trustees (2nd Ed.), Sec. 181, p. 174 (1965); 76 Am.Jur.2d, Trusts, Sec. 21, p. 269, Sec. 35, p. 282; 89 C.J.S. Trusts § 29, p. 749. Compare *Samuell v. Brooks,* 207 S.W. 626 (Tex.Civ.App. Dallas 1918, writ ref'd). Neither will the fact that the settlor imposed conditions upon the beneficiaries' enjoyment of the property, or that he retained a power to revoke the trust, or that he received no consideration for its creation defeat the existence of a present trust. 76 Am.Jur.2d, Trusts, Sec. 15, p. 263; Restatement of Trusts, Second, Sec. 26, Comment a (1959); Bogert, Trusts & Trustees (2nd Ed.), Sec. 202, p. 353 (1965). It is true that whether or not a present trust has been created depends upon the intention of the settlor, but that intention must be determined from the language used in the written declaration or trust instrument. *Cutrer v. Cutrer,* 162 Tex. 166, 345 S.W.2d 513 (1961); *William Buchanan Foundation v. Shepperd,* 283 S.W.2d 325 (Tex.Civ.App. Texarkana 1955), rev'd for settlement, 155 Tex. 406, 289 S.W.2d 553 (1956); *Schmidt v. Schmidt,* 261 S.W.2d 892 (Tex.Civ.App. Galveston 1953, writ ref'd); 2 McCormick & Ray, Texas Evidence, Sec. 1681, p. 516 (2nd Ed. 1956); Bogert, Trusts & Trustees (2nd Ed.), Sec. 51, pp. 409, 410, 413 and 414 (1965). Unless that language is ambiguous, declarations or expressions of intent on the part of the settlor which are contrary to the written statement are not admissible or effective to contradict it. *Appling v. Jay,* 390 S.W.2d 799 (Tex.Civ.App. Texarkana 1965, writ ref'd n. r. e.); 2 McCormick & Ray, Texas Evidence, Sec. 1685, p. 527 (2nd Ed. 1956); Bogert, Trusts and Trustees (2nd Ed.), Sec. 51, p. 414 (1965).

A No, sir, I have not.

. . . . .

Q Now, when you purchased this land in Mesquite in 1968, do you recall what you paid for it?

A I think we, I paid through Royce Banks, the real estate man, I think he bought it for me, for Dr. Arthur Smith, who instigated the deal, $700.00. Then, afterward, Dr. Smith decided that the land should belong to the children and with me as a Trustee—

. . . . . .

A No, I bought it for the, to, as an investment for the children, whether I paid for it as a farm or not.

Q You intended for your children to have this property?

A Sure, from the beginning.

Q You're not going to take it away from them, are you?

A Well, unless they default on the payment, I couldn't give it to them without having to pay gift taxes to the Government.

. . . . . ."

The trust declaration here is not ambiguous. The intention to vest a present beneficial interest in the beneficiaries is indicated by several provisions of the declaration. It is stated that appellee took title to the property in trust for various individuals; that some beneficiaries have previously sold their interests; that the declaration establishes the existing beneficial interest in the trust property; and that the respective interests of the beneficiaries in the property are as set out therein. Specific powers and duties are imposed upon the trustee; provisions are made for substitute trustees in the event the appellee is disqualified; and the appellee, as trustee, specifically obligates himself, in case of a sale of the trust property, to deliver to the beneficiaries their proportionate part of all proceeds less their proportionate part of any expenses relating to the maintenance or sale of the property.

■ Having found that a valid trust was created by the declaration, it becomes necessary for us to determine if appellee, as trustee, was entitled to the agricultural assessment. In making that determination, the decisive question is not whether a trustee is a "natural person", but rather whether the trustee or the beneficiaries are considered the "owners" of the land in contemplation of the constitutional provision.

There is no doubt that a trustee may represent the beneficiaries in rendering trust property for taxation and in paying the taxes levied, as well as represent the beneficiaries in court when his interest does not conflict with theirs. Tex.Rev.Civ.Stat. Ann. art. 7152(6) (1960); *Carter v. DeJarnatt,* 523 S.W.2d 88 (Tex.Civ.App. Texarkana 1975, writ ref'd n. r. e.). But when a valid trust is created, the beneficiaries become the owners of the equitable or beneficial title to the trust property, and are considered the real owners. *Parrish v. Looney,* 194 S.W.2d 419 (Tex.Civ.App.1946, no writ); *Arnold v. Southern Pine Lumber Co.,* 58 Tex.Civ.App. 186, 123 S.W. 1162 (1909, writ dism'd); *Rheinstrom v. Commissioner of Internal Revenue,* 105 F.2d 642 (8th Cir. 1939). The trustee is only the depositary of the bare legal title. *Parrish v. Looney,*

supra; Bogert, Trusts & Trustees (2nd Ed.), Sec. 146, p. 45 (1965). We believe the constitutional provision intended to give the benefit of the agricultural assessment to the real owners—not the mere holder of legal title. It is the beneficiaries, not the trustee, who will receive the benefit of the agricultural assessment, and it logically should be their occupations and primary sources of income, not the trustee's, which should determine if the agricultural assessment should be applied. A contrary holding would effectively defeat the provision's attempt to restrict its application to natural persons. If a trustee may be considered the owner for the purposes of the assessment, a corporation could transfer the legal title to its land to an individual trustee who qualified as to occupation and primary source of income, and thus receive the benefit which the constitutional provision intended to deny. We agree with the view of Judge Stephenson in his concurring opinion in *Driscoll Foundation v. Nueces County,* 445 S.W.2d 1 (Tex.Civ.App. Beaumont 1969), err. dism'd, 450 S.W.2d 320 (Tex. 1969), and hold that the beneficiaries of the trust, rather than the trustee, are the owners of the land within the meaning of the constitutional provision.

It follows that appellee was not entitled to the relief sought. He was not the owner of the land in question. Nor were the beneficiaries entitled to relief in this proceeding. They qualified as owners, but there was no evidence presented to the taxing authorities or to the court bringing themselves within the constitutional provision.

Appellants' points 2 and 3 are sustained. Point 1 is overruled. The other points are not reached. The judgment of the trial court is reversed and judgment is here rendered that appellee take nothing.