SOUTHWEST LIVESTOCK AND TRUCKING COMPANY, Appellant,

v.

TEXAS AIR CONTROL BOARD, Appellee.

No. 1240.

Court of Civil Appeals of Texas, Tyler.

March 22, 1979.

Rehearing Denied April 19, 1979.

Winfred Hooper, Jr., Hooper, Chappell & Broiles, Douglas R. Hudman, Fort Worth, for appellant.

Jim Mathews, Environmental Protection Division, Asst. Atty. Gen., Austin, for appellee.

SUMMERS, Chief Justice.

This is an appeal from a judgment of the district court upholding an order issued by the Texas Air Control Board, appellee, which found appellant, Southwest Livestock and Trucking Company, to be in violation of the Texas Clean Air Act, Article 4477–5, Tex.Rev.Civ.Stat.Ann., and requiring certain corrective measures to be taken by appellant.

Appellant owns and operates a livestock holding facility in Del Rio, Val Verde County, Texas. Such facility includes approximately 40 livestock pens, a repair shop, some scale houses, a shearing barn, two sets of weighing scales, and has a maximum capacity for handling about 5000 head of livestock at one time. The pens were built about 1900 at their present location. Appellant utilizes these facilities in its business of shipping, weighing, buying, selling, sorting and temporarily confining sheep, goats, cattle and other livestock.

In response to complaints lodged with appellee concerning offensive odors allegedly emitted from appellant's facility, public hearings were conducted by appellee in Del Rio, Texas. Following four days of hearings, appellee issued its Order No. 76–8 finding appellant in violation of the Texas Clean Air Act, supra, and requiring certain procedures to bring appellant into compliance with the Act.

Pursuant to Section 6.01 of the Texas Clean Air Act, appellant sought judicial review of appellee's order in the 53rd Judicial District Court of Travis County. In accordance with Section 19, Administrative Procedure and Texas Register Act, Article 6252–13a, Tex.Rev.Civ.Stat.Ann., judicial review was conducted under the substantial evidence rule, whereupon the district court entered a judgment upholding the order of the Board and denying appellant all relief sought. From this adverse judgment, appellant has perfected its appeal to this court.

We affirm.

Appellant predicates its appeal upon three points of error which complain that

the district court erred in (1) its finding that the Texas Air Control Board had jurisdiction of the subject in this case when it issued its enforcement Order No. 76–8 against the appellant; (2) its finding that the "Findings of Fact stated by the Board constitute a concise and explicit statement of underlying facts which as a matter of law support an implied finding of fact in statutory language that the odors in question are produced by processes other than natural"; and (3) its finding that the odors emitted by plaintiff's facility are air "contaminants" as that term is defined in Section 1.03 of the Texas Clean Air Act.

All three points of error urged by appellant go to the single issue presented for decision on this appeal, i. e., whether the Texas Air Control Board has jurisdiction under the Texas Clean Air Act, supra, to exercise control over the emission of odors from appellant's said livestock facility. The precise question which is before this court is one of law, not of fact. It has been factually established and not attacked on this appeal that appellant's livestock pens create an odoriferous condition highly objectionable to many of its neighbors. The issue on appeal will determine whether appellee, as the statutorily established representative of the public with regard to the quality of Texas' air resources, has the statutory power to impose reasonable abatement practices upon the operation of appellant's livestock facility. Thus the issue boils down to one of proper construction and interpretation of the language of the Texas Clean Air Act.

■ The Texas Clean Air Act is a comprehensive measure for controlling and abating air pollution and emission of air contaminants. Section 1.05 provides that the Texas Air Control Board is "the principal authority in the state on matters relating to the quality of the air resources in the state and for setting standards, criteria, levels and emission limits for air content and pollution control." Section 1.02 provides that the purpose of this Act is "to safeguard the air resources of the state from pollution by controlling or abating air pollution and emissions of air contaminants,

consistent with the protection of health, general welfare, and physical property of the people." The Board is directed to "seek the accomplishment of the purposes of this Act through the control of air contaminants by all practical and economically feasible methods consistent with the powers and duties of the board," Section 3.01, and in Section 3.09 of the Act, the Board is empowered to make rules and regulations consistent with the general intent and purposes of the Act. It is therefore the responsibility of appellee under the Clean Air Act to protect the air resources of Texas through the control of air pollution, which is to be accomplished by the control of air contaminant emissions. Sections 1.02 and 3.01, supra.

■ Section 1.03 of the Act goes on to define these all important terms of air pollution and air contaminants. "Air pollution" is defined in Section 1.03(3) as meaning

"the presence in the atmosphere of one or more air contaminants or combinations thereof, in such concentration and of such duration as are or may tend to be injurious to or adversely affect human health or welfare, animal life, vegetation or property, or as to interfere with the normal use and enjoyment of animal life, vegetation or property."

Section 1.03(1) of the Act defines "air contaminant" as meaning "particular matter, dust, fumes, gas, mist, smoke, vapor or odor, or any combination thereof *produced by processes other than natural.*" (Emphasis added.)

Thus, under the Clean Air Act appellee is granted the power to control the emission of all the above listed elements, except for when they are *naturally* produced. Appellant contends the odors emitted by its livestock facility are *naturally* produced, as that concept is intended in the Act, thus placing its odor emissions beyond control of appellee. Appellee disputes this and contends that appellant's odors are produced by "processes other than natural" and therefore subject to regulation by the Board. We agree with appellee's contention.

A beginning point for interpreting the meaning to be given the phraseology "natural processes" under the Texas Clean Air Act is provided by the court in *Europak, Inc. v. County of Hunt*, 507 S.W.2d 884 (Tex.Civ.App.—Dallas 1974, no writ). This decision is the sole reported judicial authority to date speaking to the construction of the statutory language in dispute here. In that case the Dallas Court of Civil Appeals upheld a temporary injunction preventing the construction of a proposed horse slaughtering facility without a permit under Section 3.27 of the Act. The projected facility in that case consisted of both stockpens to confine 300 horses and the rendering plant itself. The operators in *Europak* resisted any jurisdiction of the Air Control Board over the odors to be created by their proposed facility, arguing that these odors would not be "produced by processes other than natural." The Dallas Court disagreed and held that the trial court was justified in concluding that the odor from the pens as well as from the building would be "produced by processes other than natural" and that Section 3.27(a) of the Act forbids construction of such a facility without a permit.

In interpreting the meaning of "natural processes," the court in *Europak* concerned itself with two separate but related concepts: (1) that which occurs in nature, as distinguished from that which is brought about by man's devices, and (2) that which occurs in the course of normal experience, as distinguished from the abnormal or unusual. Under the first concept, the important consideration is the kind or degree of human intervention involved in the production of the emission problem. The second concept involves a consideration of geographic or locational normality in determining the *naturalness* of an emission, i. e., whether particular emissions are normal for a certain area. The *Europak* court, applying both concepts, then held as follows:

> "[A] 'natural process' is one that occurs in nature and is affected or controlled by human devices only to an extent normal and usual for the particular area involved. All other contaminants are 'produced by processes other than natural' within the meaning of the Act." (Supra at 891)

In the instant case appellant's holding pens are located well within the city limits of Del Rio, Texas, and have a maximum capacity for confining approximately 5000 head of livestock at one time. This maximum capacity is reached on 10 to 15 days per year, and the average number of livestock in the pens on a given day would be about 900 head. The administrative record is replete with competent evidence that private residences and service-oriented businesses are situated in close proximity to appellant's livestock facility. The record shows that these close neighbors, as well as private homes and businesses farther out, are adversely affected by the odors generated by appellant's livestock operation. It should not be considered normal, usual or natural to find odoriferous livestock pens situated in such close proximity to urban land uses such as homes and small commercial establishments which are particularly susceptible to strong odors.

Accordingly, in this case we hold that the Board and the trial court were justified in concluding that the odor from appellant's livestock pens would be "produced by processes other than natural"; and that, although the process which directly produces the odor may be one that occurs in nature, the administrative record supports a finding that the concentration of such a large number of livestock into such a small area as the pens at appellant's livestock facility would not now be normal in this vicinity. Although the livestock pens have been in their present location since about 1900, we must consider the vicinity as the same is presently constituted, an urban area with private homes and service-oriented businesses in close proximity to appellant's facility. Therefore, the trial court correctly held that the Texas Air Control Board had jurisdiction under the Texas Clean Air Act when it entered its enforcement order No. 76–8 to control and abate the emission of odors as air contaminants from appellant's livestock facility.

We have considered all of appellant's points of error and believe them to be without merit and the same are overruled. The judgment of the trial court is affirmed.