**Eugene Bragg SMITH, Jr., Trustee et al., Appellants,**

v.

**Doris H. PADGETT et al., Appellees.**

**No. 8379.**

Court of Civil Appeals of Texas, Beaumont.

Dec. 27, 1979.

Rehearing Denied Jan. 31, 1980.

Dennis Reese, Austin, for appellants.

William Andress, Jr., Earl Luna, Dallas, for appellees.

KEITH, Justice.

Plaintiffs have appealed from an adverse judgment rendered in a bench trial. The principal issue involved in the appeal is whether plaintiffs are entitled to have their property assessed under the agricultural use provisions of *Article 8, Sec. 1–d, Constitution of Texas.* Plaintiffs sued the Town of Sunnyvale and Sunnyvale Independent School District, the joint tax assessor-collector of the two entities and the Board of Trustees of the School District. We will speak of the defendants collectively since a common defense has been tendered by the parties.

The property involved consists of seven tracts of land aggregating 400.225 acres which were held jointly by the trustees of two trusts: Eugene Bragg Smith, Jr., Trust, and Beverly Bragg Smith Trust. The plaintiffs were the three common trustees of the two trusts and the beneficiaries thereof.[1]

Plaintiffs sought relief by way of injunction and mandamus to compel the defendants to value the property based upon its agricultural use designation. Eugene Bragg Smith, Jr., also sought similar relief for the tax year 1978 for other real property owned by him individually. The trial court denied all relief and plaintiffs appeal.

The constitutional provision involved, *Article 8, Sec. 1–d, Subdiv. (a)*, reads:

> "All land owned by natural persons which is designated for agricultural use in accordance with the provisions of this Section shall be assessed for all tax purposes on the consideration of only those factors relative to such agricultural use. 'Agricultural use' means the raising of livestock or growing of crops, fruit, flowers, and other products of the soil under natural conditions as a business venture for profit, which business is the primary occupation and source of income of the owner."

The trusts owned the several tracts of land involved jointly, and unquestionably the land was used for agricultural purposes as defined in the constitutional provision involved.

*Eugene B. Smith, Jr.*, was the income beneficiary of the Eugene Bragg Smith, Jr., Trust, as well as being a trustee of both trusts. He was also the manager of the agricultural operations of both trusts and owned, individually, other real property and engaged in other operations. He operated feedlots in several counties (none on the property involved herein), was president of a corporation which operated cotton compresses, warehouses, etc.; he was a bank director, and had other outside activities.

---

1. The three common trustees of both trusts were Eugene Bragg Smith, Jr., B. B. Turner, and William H. Smith. The respective income beneficiaries of each trust were Eugene Bragg Smith, Jr., and his sister, Beverly Bragg Smith Lide.

**532**

He testified that he spent more than sixty percent of his time in the operation of the agricultural business of the two trusts, although it is quite clear that he personally never planted a seed nor tended to a cow or calf during the years involved. The evidence, mainly from his accountant, indicated that more than fifty percent of his gross income was derived from feedlot operations.

*Beverly Bragg Smith Lide* was the income beneficiary of the Beverly Bragg Smith Trust. She testified that she had no occupation other than that of a housewife, and that she did not engage "in any agricultural activities of any kind or character" during the years involved in the suit. The figures presented by her accountant indicated that her agricultural income from the trust, which included some from cattle feeding operations, exceeded her "passive non-agricultural income."

Plaintiffs raise many interesting factual and legal questions which we do not find it necessary to mention or decide in our disposition of the appeal.[2] Instead, we turn to the controlling question presented by our record: does the operation of a commercial feedlot wherein cattle are kept in confinement and fed prepared foods so as to hasten their weight gain and maturity constitute the "raising of livestock . . . under natural conditions"?

Both of the trusts and each of the income beneficiaries of the trusts, as well as Eugene Smith, had more income from the feedlot operations than they did from any other facet of their activities during the years involved. We turn now to a consideration of the question of whether such an operation qualifies under the agricultural use provision of the constitutional amendment.

■ One who seeks a favored position with reference to the imposition of taxes labors under the burden of showing clearly that he comes within the requirements of the constitutional provision which he invokes. *Hilltop Village, Inc. v. Kerrville Independent School Dist.*, 410 S.W.2d 824, 825 (Tex.Civ.App.—San Antonio 1966), aff'd, 426 S.W.2d 943 (Tex.1968), and cases therein cited. See also, *Davies v. Meyer*, 528 S.W.2d 864, 867 (Tex.Civ.App.—Fort Worth, 1975), aff'd, 541 S.W.2d 827, 829 (Tex.1976).

Our record discloses that in the operation of a commercial feedlot a large number of animals are confined to a relatively restricted area where they are fed regularly with prepared feed. The end result is that the cattle are marketable much sooner than under ordinary open-range conditions.

Plaintiffs offered Dr. Lowell M. Schake, a professor of Animal Science specializing in animal nutrition at Texas A. & M. University, who gave extensive testimony on feedlot operations. It was his opinion that "the raising of livestock by placing them in commercial feedlots is a natural condition to the raising of livestock of very long standing." This operation makes healthier cattle and roughly 70–75% of the beef we eat today comes from cattle processed through feedlots.

■ The amendment is clearly worded and the agricultural use provision can be granted only to those engaged in "the raising of livestock . . . *under natural conditions* as a business venture for profit, which business is the primary occupation and source of income of the owner." (*Art. 8, Sec. 1–d, Subdiv. (a), Constitution*, emphasis supplied.) The trial court held that the feedlot operation was not the growing of cattle under natural conditions. We agree.

Defendants point to precedents arising under the Texas Clean Air Act, *Tex.Rev. Civ.Stat.Ann. Art. 4477–5, Sec. 1.03(1)*

2. The trustees and the income beneficiaries of the two trusts are natural persons. Under our view of the record, as shown hereafter, we are not required to make a determination of whether or not we will follow our earlier holding set out in *Driscoll Foundation v. Nueces County*, 445 S.W.2d 1, 6 (Tex.Civ.App.—Beaumont)

writ ref'd n. r. e. per curiam, 450 S.W.2d 320 (Tex.1969), or the contrary view as set out in *City of Mesquite v. Malouf*, 553 S.W.2d 639, 644 (Tex.Civ.App.—Texarkana 1977, writ ref'd n. r. e.). Plaintiffs do not qualify for the agricultural use assessment under either the *Driscoll* or the *Malouf* holding.

*(1976),* quoted in the margin,[3] which defines an "air contaminant" as one "produced by processes other than natural." Two of our Courts of Civil Appeals have held that odors produced by the confinement of a relatively large number of animals in a small space are not produced naturally. *Europak, Inc. v. County of Hunt,* 507 S.W.2d 884, 891 (Tex.Civ.App.—Dallas 1974, no writ); and *Southwest Livestock & Trucking Co. v. Texas Air Control Board,* 579 S.W.2d 549, 551–552 (Tex.Civ.App.—Tyler 1979, writ ref'd n. r. e.).

We apply the rationale of the two cited cases to the facts at bar and conclude that the feedlot question did not constitute the raising of livestock "under natural conditions." Consequently, the primary occupation and source of income of Eugene Smith and his sister, Ms. Lide, was not within the ambit of the constitutional provision upon which they rely. See and compare, *Gragg v. Cayuga Independent School Dist.,* 539 S.W.2d 861, 865 (Tex.1976).

So holding, the remaining assignments become immaterial because regardless of our disposition, plaintiffs may not prevail. Finding no error, the judgment of the trial court is affirmed.

---

**3.** *Art. 4477–5, Sec. 1.03(1):* " 'air contaminant' means particulate matter, dust, fumes, gas, mist, smoke, vapor or odor, or any combination thereof produced by processes other than natural."