

# THE ATTORNEY GENERAL
## OF TEXAS

March 19, 1987

JIM MATTOX
ATTORNEY GENERAL

Mr. Allen Eli Bell
Executive Director
Texas Air Control Board
6330 Hwy 290 East
Austin, Texas    78723

Opinion No. JM-649

Re: Applicability of section 3.27 of the Texas Clean Air Act to incinerators used to dispose of hazardous waste materials at specific sites

Dear Mr. Bell:

You ask whether the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq. (1982), or subchapter H of the Texas Water Code preempts the Texas Air Control Board's authority to require permits under section 3.27 of the Texas Clean Air Act, article 4477-5, V.T.C.S.

The Texas Clean Air Act makes the Air Control Board the state agency responsible for protecting air quality in Texas by authorizing the board to regulate the release of air pollutants. See State v. Associated Metals & Minerals Corporation, 635 S.W.2d 407, 409 (Tex. 1982); Southwest Livestock and Trucking Company v. Texas Air Control Board, 579 S.W.2d 549, 551 (Tex. Civ. App. - Tyler 1979, writ ref'd n.r.e.). One of the primary methods available to the board to affect air quality is the board's permitting authority. See art. 4477-5, §3.27; State v. Associated Metals & Minerals Corporation, supra. Section 3.27 provides, in part:

> (a) Any person who plans to construct any new facility or to engage in the modification of any existing facility which may emit air contaminants into the air of this State shall apply for and obtain a construction permit from the board before any actual work is begun on the facility. The board may issue special permits to certain facilities. The board by rule may exempt certain types of facilities from the requirements of Section 3.27 and Section 3.28 if it is found upon investigation that such facilities or types of facilities will not make a significant contribution of air contaminants to the atmosphere.

V.T.C.S. art. 4477-5, §3.27(a). You ask whether the board may apply this provision to incinerators used to dispose of hazardous materials at certain designated hazardous waste disposal sites.

The Comprehensive Environmental Response, Compensation and Liability Act of 1980 (hereinafter Superfund), 42 U.S.C. §9601 et seq. (1982), provides for the cleanup of designated hazardous waste disposal sites through direct federal action and cooperative action between affected states and the federal government. See 42 U.S.C. §9604 (1982). Subchapter H of the Texas Water Code expressly authorizes the Texas Water Commission to enter into cooperative agreements with the federal government to effect remedial actions for Superfund disposal facilities. See Tex. Water Code §26.303. You ask whether either this federal law or this state law preempts the Air Control Board's authority to require permits under section 3.27 at Superfund hazardous waste disposal sites.

The 99th Congress recently passed the "Superfund Amendments and Reauthorization Act of 1986." Pub. L. No. 99-499, 100 Stat. 1613 (1986) (amending 42 U.S.C. §9601 et seq.). These amendments clarify the concerns raised by your request. Section 114(a) of Superfund, 42 U.S.C. §9614(a), provides that

> [n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State.

This provision remained unchanged in the 99th Congress.

A provision was added, however, to the cleanup standards set forth in the federal act which preempts state and local permitting authority with regard to the cleanup sites covered by section 121 of Superfund. See 42 U.S.C. §9621. Section 121(e)(1) of the 99th Congress' amendments provides:

> No Federal, State, or local permit shall be required for the portion of any removal or remedial action conducted entirely onsite, where such remedial action is selected and carried out in compliance with this section.

Pub. L. No. 99-499, §121(e)(1), 100 Stat. 1613, 1676 (1986). This section expressly preempts the state's authority to require permits for onsite remedial actions covered by section 121. See Louisiana Public Service Commission v. Federal Communications Commission, 106 S.Ct. 1890, 1898 (1986) (basic preemption test).

Nevertheless, it should be noted that the requirement that remedial actions comply with the cleanup standards set forth in section 121 mitigates the effect of the statement that permits shall not be required. Section 121(d) requires that remedial actions selected by the federal government shall observe certain state standards:

DEGREE OF CLEANUP –– (1) Remedial actions selected under this section or otherwise required or agreed to by the President under this Act shall attain a degree of cleanup of hazardous substances, pollutants, and contaminants released into the environment and of control of further release at a minimum which assures protection of human health and the environment. Such remedial actions shall be relevant and appropriate under the circumstances presented by the release or threatened release of such substance, pollutant, or contaminant.

(2)(A) With respect to any hazardous substance, pollutant or contaminant that will remain onsite, if ––

(i) any standard, requirement, criteria, or limitation under any Federal environmental law, including, but not limited to, the Toxic Substances Control Act, the Safe Drinking Water Act, the Clean Air Act, the Clean Water Act, the Marine Protection, Research and Sanctuaries Act, or the Solid Waste Disposal Act; or

(ii) <u>any promulgated standard, requirement, criteria, or limitation under a State environmental or facility siting law that is more stringent than any Federal standard, requirement, criteria, or limitation, including each such State standard, requirement, criteria, or limitation contained in a program approved, authorized or delegated by the Administrator under a statute cited in subparagraph (A), and that has been identified to the President by the State in a timely manner</u>,

is legally applicable to the hazardous substance or pollutant or contaminant concerned or is relevant and appropriate under the circumstances of the release or threatened release of such hazardous substance or pollutant or contaminant, the remedial action selected under section 104 or secured under section 106 shall require, at the completion of the remedial action, a level or standard of control for such hazardous substance or pollutant or contaminant which at least attains such legally applicable or relevant and appropriate standard, requirement, criteria, or limitation. Such remedial action shall require a level or standard of control which at least

> attains Maximum Contaminant Level Goals. established under the Safe Drinking Water Act and water quality criteria established under section 304 or 303 of the Clean Water Act, where such goals or criteria are relevant and appropriate under the circumstances of the release or threatened release. (Emphasis added).

Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613, 1673-74 (1986). Cf. §121(d)(2)(C) (qualifies which state requirements apply in certain other circumstances).

Section 121(e)(2) as amended provides the state with a remedy in lieu of its permitting authority:

> (2) A State may enforce any Federal or State standard, requirement, criteria, or limitation to which the remedial action is required to conform under this Act in the United States district court for the district in which the facility is located. Any consent decree shall require the parties to attempt expeditiously to resolve disagreements concerning implementation of the remedial action informally with the appropriate Federal and State agencies. Where the parties agree, the consent decree may provide for administrative enforcement. Each consent decree shall also contain stipulated penalties for violations of the decree in an amount not to exceed $25,000 per day, which may be enforced by either the President or the State. Such stipulated penalties shall not be construed to impair or affect the authority of the court to order compliance with the specific terms of any such decree. (Emphasis added).

Additionally, section 121(f) requires the federal government to provide for "substantial and meaningful involvement by each State in initiation, development, and selection of remedial actions to be undertaken in that State."

Consequently, section 121(e)(1) expressly preempts the Texas Air Control Board's authority to require permits for incinerators used to dispose of hazardous materials onsite at Superfund hazardous waste disposal sites covered by section 121. Section 121, however, provides that the federal government must observe certain state standards. The Texas Air Control Board is therefore not totally precluded by the federal act from exercising influence over air quality at section 121 Superfund sites. The federal act provides for state participation in the choice of remedial action standards and for the enforcement of state requirements with regard to such sites. In light of this conclusion, it is unnecessary to determine whether the Texas Water

Code also preempts the Air Control Board's permitting authority with regard to these sites.

## S U M M A R Y

Section 121(e)(1) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §9601 et seq., as amended by the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499, 100 Stat. 1613 (1986) (amending 42 U.S.C. §9601 et seq.), preempts the Texas Air Control Board's permitting authority under section 3.27 of the Texas Clean Air Act, article 4477-5, V.T.C.S., with regard to remedial action selected and carried out in compliance with section 121 of the federal act.

Very truly yours

J I M   M A T T O X
Attorney General of Texas

JACK HIGHTOWER
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jennifer Riggs
Assistant Attorney General