STATE of Texas, Appellant,

v.

F/R CATTLE COMPANY, INC., Appellee.

No. 11–91–201–CV.

Court of Appeals of Texas,
Eastland.

April 20, 1994.

Suzanne Latting, Ken Cross, Greg A. Cooke, Asst. Atty. Gen., Chief, Environmental Protection, Austin, for appellant.

John Turney, Bernsen, Jamail & Goodson, L.L.P., Austin, Robert J. Glasgow, Glasgow & Taylor, Stephenville, Stuart N. Henry, Henry, Lowerre, Hess & Fredrick, Austin, for appellee.

## OPINION

McCLOUD, Chief Justice.

### On Remand

The issue on remand is whether the evidence is factually sufficient to support the trial court's findings that the calf feeding facility operated by F/R Cattle Company, Inc. was normal, usual, and natural for "the area and locality" and that the odor produced by the facility was normal and usual for "the vicinity."[1] We hold that the evidence is sufficient and affirm.

Originally, this court held that, as a matter of law, it was abnormal and unusual, without regard to location, to concentrate approximately 6,000 baby calves in 1,500 small hutches and in weaning pens. *State v. F/R Cattle Company, Inc.*, 828 S.W.2d 303 (Tex. App.—Eastland 1992). The Texas Supreme Court held that location was a factor to be considered and that there was "some" evidence to support the findings that the facility was normal and usual for the area, reversed this court's judgment on the no evidence point, and remanded the case for consideration of the remaining challenge to the factual sufficiency of the evidence. *F/R Cattle Company, Inc. v. State*, 866 S.W.2d 200 (Tex. 1993).

---

1. "Odor" is listed in Section 382.003(2) of the Texas Health & Safety Code as an "Air contami-
nant" if it is "produced by processes other than natural."

The State of Texas sought to enjoin the calf feeding facility operated by F/R Cattle Company, Inc. The issue before the trial court was whether the facility was subject to the provisions of the Texas Clean Air Act, TEX. HEALTH & SAFETY CODE ANN. § 382.001 et seq. (Vernon 1992 and Supp. 1994). The trial court found that an exclusion applied, sustained F/R's plea to the jurisdiction, and dismissed the suit. The trial court entered the following findings of fact which the State now challenges:

16. [F/R's] calf operation is normal, usual and natural in the area and locality where it is situated.

17. Any odor resulting from [F/R's] operation is odor produced from a process that occurs in nature, and is affected or controlled by human devices only to an extent normal and usual in the vicinity.

■ The State contends that the evidence is factually insufficient to support the trial court's findings. In reviewing the factually insufficient point, we must consider and weigh all of the evidence and set aside the order and remand the cause for a new trial if we conclude that the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *Pool v. Ford Motor Company*, 715 S.W.2d 629 (Tex. 1986); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

The record reflects that in July of 1990 F/R began to operate the "calf ranch" which was located approximately three miles south of Lingleville in Erath County. It is undisputed that the calf feeding facility was the only one of its kind in the State of Texas. It is further undisputed that numerous dairies were located not only in Erath County but also in the immediate area surrounding the facility.

Richard Edward Robey, the operating manager of the facility, testified that dairy calves were the "by-product" of the area dairies because dairy cows must be bred in order for them to produce milk. Robey would pick up day-old calves from surrounding dairies and house and feed them at the facility for approximately 110 to 120 days. The calves were given "good colostrum management" and then introduced to milk and grain. When the calves reached a desired weight of 250 to 300 pounds, they were sold to either dairies or feedlots.

Robey testified that the area dairies as well as the calf feeding facility produced an odor of manure. He found the odor to be unpleasant, and he could not distinguish between the odor of dairy cow manure and the odor of calf manure.

Jesse J. Macias, Jr., an engineering specialist and a complaints group supervisor for the Texas Air Control Board, testified that calf manure had a "much sharper, much more strong, much more putrid" odor than cow manure. Macias also testified that the odor at the facility was "quite strong." Area residents described the odor from the facility as "putrid and rancid," "stinky," "rotten smelling," "awful," "most rancid smell you can imagine," "very foul," and "just unacceptable."

Ronnie McConnell trained cutting horses in the area and had grown up in the area. He stated that, until the calf feeding facility began operation, he had never before smelled the "putrid" odor it produced and that he had not smelled this odor in any other part of Erath County. Weldon McConnell testified that, in the 50 years he had lived in the area, he had "never" before smelled the "latrine odors" which came from the facility. He stated that the facility did not smell like a dairy. Tammy Ann Merriman, who was raised on a dairy in the area, was of the opinion that the odor from calf manure was different and much worse than the odor from dairy cow manure.

Dwight Pittman, a consultant engineer and a certified waste management specialist, calculated the amounts of manure cattle produce. Pittman testified that a dairy cow produced approximately 14.7 pounds of dry manure a day and 7,511 pounds of dry manure a year. Based on those calculations, Pittman stated that a dairy with 400 cows would produce a little over 3,000,000 pounds of dry manure a year. Calves produced significantly less manure; and, according to Pittman's calculations, it would take 6,000 calves the size of the calves on the facility at the time of trial to produce the same amount

of manure as 475 dairy cows. Pittman had been on 50 to 60 dairies in Erath County and testified that a 400–cow dairy would be a medium size dairy for the area. Pittman further testified that the odor of the calf feeding facility was "[s]imilar to a dairy operation" and that, after four or five days when the waste had cleared out from a newborn calf's system, he could not distinguish between the odor of calf manure and grown cow manure.

The trial court's findings are supported by the evidence and are not manifestly unjust: the calf feeding facility was located in an agricultural area where numerous dairies operated; the calves housed and fed at the facility were the "by-product" of area dairy cows; both the calves on the facility and the area dairy cows produced manure which in turn produced an odor; and the odor of bovine manure was common to this particular location. The fact that witnesses differed in their opinion of the offensiveness of calf manure as opposed to dairy cow manure or the fact that the calf feeding facility was the only one of its kind does not establish that the findings are manifestly unjust or against the great weight and preponderance of the evidence. The point of error is overruled.

Because the evidence supports the trial court's finding that the odor was produced by natural processes, the odor was not an "air contaminant" under Section 382.003(2) of the Texas Clean Air Act. See *Southwest Livestock and Trucking Company v. Texas Air Control Board*, 579 S.W.2d 549 (Tex.Civ. App.—Tyler 1979, writ ref'd n.r.e.); *Europak, Inc. v. County of Hunt*, 507 S.W.2d 884 (Tex.Civ.App.—Dallas 1974, no writ). The order of the trial court is affirmed.