Evelyn L. HALLMARK, Appellant,

v.

PORT/COOPER–T. SMITH STEVEDORING COMPANY, Starboard Stevedoring, Inc., CT Stevedoring, Inc. and Bonnie Darlene Starnes, Appellees.

No. 13–93–489–CV.

Court of Appeals of Texas, Corpus Christi.

July 13, 1995.

Rehearing Overruled Oct. 5, 1995.

Stephen G. Scholl, Fred Rhodes, Maxine D. Goodman, Hirsch & Westheimer, Houston, for appellant.

Stephen W. Smith, Teri L. Danish, Fulbright & Jaworski, Houston, for appellees.

Before FEDERICO G. HINOJOSA, Jr., CHAVEZ and BASS,[1] JJ.

## OPINION

CHAVEZ, Justice.

Evelyn Hallmark brought an action against appellees alleging, among other causes of action, breach of a written employment contract. The trial court granted appellees' motion for summary judgment on all of her causes of action. Hallmark limits her appeal to the dismissal of her breach of contract action. We affirm.

Port/Cooper–T. Smith Stevedoring Company (Port/Cooper) is a partnership which was formed on August 12, 1987, by the merger of two corporations, Starboard Stevedoring, Inc. of Houston, Texas (Starboard) and CT Stevedoring, Inc. of Mobile, Alabama (CTS). Starboard is a subsidiary of Port Stevedoring Company (Port), a corporation owned by Orval H. Hall, his daughter Darlene Starnes, and Hallmark. CTS is a subsidiary of Cooper/T. Smith Corporation, 50% owned by Angus Cooper. Starboard and CTS were formed to facilitate the partnership's formation. On the date of the partnership's formation, Hall, Starnes, and Hallmark signed ten-year employment contracts with renewal options. Hallmark's contract contained a termination clause which reads as follows:

> Section 3. TERM: Subject to being sooner terminated as provided in this Agreement, the term of Employee's employment shall commence upon the date of this Agreement and shall continue for 10 years....

In addition to the foregoing, the term of the Employee's employment hereunder shall also terminate upon the occurrence of any of the following:

> (a) The unanimous decision of all of the Partners of the Partnership, so long as the then outstanding partnership in-

---

1. Assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1988).

terests of the Partnership are owned equally, either directly or indirectly, by the Port Shareholders on the one hand, and the CTS Shareholders, on the other hand. For purposes of this Agreement, (i) the term "Port Shareholders" shall mean the Employee, Darlene Starnes, O.H. Hall, their respective heirs and personal representatives, lineal descendants, the respective spouses of the foregoing and any combination of the foregoing. . . .

In 1988, Hallmark transferred her stock in Port to the Evelyn Lee Hallmark Family Trusts and named her daughter, Velma Kleinfelder, as trustee. Orvall Hall transferred his stock to the Mr. & Mrs. Orval Hall Family Trusts and named Darlene Starnes as trustee. On December 16, 1991, Orvall Hall died unexpectedly, and in the following month, Angus Cooper II visited the offices of Port/Cooper to discuss the future of the company in the absence of Orvall Hall. During a meeting between Cooper, Starnes, and Hallmark, an argument occurred. Although what was actually said at the meeting is in dispute, the end result was that Hallmark's employment was terminated. She was later removed as an officer and director at Starboard and Port. She then brought her action against Port/Cooper, Starboard, CTS, and Starnes. The trial court granted a summary judgment against all of Hallmark's causes of action. She only complains on appeal from the adverse ruling on her breach of contract claim.

■■■ The question on appeal from the granting of summary judgment is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the plaintiff's cause of action. *Gibbs v. General Motors Corp.,* 450 S.W.2d 827, 828 (Tex.1970); Tex.R.Civ.P. 166a(c). The burden of proof is on the movant and all evidence favorable to the nonmovant will be taken as true. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 549 (Tex.1985). Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor. *Id.* To be entitled to judgment, movant must expressly set out his

grounds in the motion. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 677 (Tex.1979).

In her sole point of error, Hallmark claims the trial court erred in granting appellees' motion for summary judgment because the court concluded that the condition precedent to the enforcement of the termination clause in the employment agreement had been satisfied. Among other things, Hallmark argues that she could only be terminated without cause by the unanimous decision of all of the partners of the partnership so long as the then outstanding partnership interests of the partnership are owned, either directly or indirectly, by the Port shareholders on the one hand and the CTS shareholders on the other hand. Hallmark argues that Section 3(a) specifically limited the composition of the Port shareholders, thereby excluding any other class of persons as possible Port shareholders, including the trusts that were created and to which her stock was transferred. The stock certificates issued for the stock that Hallmark transferred to the trust were issued in the name of the Evelyn Lee Hallmark Family Trusts. Therefore, the threshold question is whether the stock held in the trusts still met the direct or indirect ownership requirement expressed in Section 3(a) of the employment agreement, or if the transfer of the stock made Section 3(a) inoperative.

■■■ A trust is a method used to transfer property. *Jameson v. Bain,* 693 S.W.2d 676, 680 (Tex.App.—San Antonio 1985, no writ). "[W]hen a valid trust is created, the beneficiaries become the owners of the equitable or beneficial title to the trust property and are considered the real owners; the trustee is merely the depository of the bare legal title." *City of Mesquite v. Malouf,* 553 S.W.2d 639, 644 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.). The trustee is vested with legal title and right of possession of the trust property but holds it for the benefit of the beneficiaries, who are vested with equitable title to the trust property. *Jameson,* 693 S.W.2d at 680.

■■■ The Hallmark Family Trusts is an irrevocable trust; therefore, Hallmark no longer has any interest in the trust. The

stock certificates show that the stock is held by the trust. Hence, when the Hallmark Family Trusts was created, Hallmark's daughter, Velma Kleinfelder, took legal title to the stock as trustee. The beneficiaries of the trust, Velma and Hallmark's grandchildren, hold equitable title and are considered the real owners of the stock. Hallmark contends that the application of the ordinary and commonly used meaning of "to own" demonstrates that the trustee cannot be deemed the "owner" of the trust property. The definition of "own" is "to have a legal or rightful title to" and "to possess." BLACK'S LAW DICTIONARY 1105 (6th ed. 1990); WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 843 (1987). The trustee fits entirely within the definition since a trustee is vested with legal title and has the right to possession of the trust property.

■ Hallmark further argues that the trial court's reliance on the trust instruments in determining ownership of the stock violates the parol evidence rule since the employment contract contains an integration clause in Section 12 which reads as follows:

> ENTIRE AGREEMENT: This instrument contains the entire agreement between the parties relating to the employment of Employee. It may not be amended or modified except by instrument in writing which is signed by the party against whom it is sought to be enforced.

■ When contracting parties have concluded a valid integrated agreement, whether written or oral, dealing with the particular subject matter they have between them, the parol evidence rule prevents the enforcement of *prior or contemporaneous* agreements which are inconsistent with the integrated agreement. *Weinacht v. Phillips Coal Co.,* 673 S.W.2d 677, 679 (Tex.App.—Dallas 1984, no writ). The parol evidence rule does not preclude enforcement of prior contemporaneous agreements which are collateral to, not inconsistent with, and do not vary or contradict the express or implied terms or obligations thereof. *Hubacek v. Ennis State Bank,* 159 Tex. 166, 317 S.W.2d 30, 32 (1958); *Boy Scouts of Am. v. Responsive Terminal Sys., Inc.,* 790 S.W.2d 738, 745 (Tex.App.—Dallas 1990, writ denied).

Hallmark signed her employment contract in August 1987. The trust agreements were executed in 1988. The trust agreements are entirely different and separate from the employment contract. Moreover, the trust agreements occurred subsequent to the employment contract. Because they are not prior or contemporaneous agreements, the parol evidence rule is inapplicable and does not bar evidence of subsequent agreements. The agreements are used to explain and give effect to Section 3(a) in determining the ownership of the stock; they are not used to determine the meaning of the provision. Furthermore, the agreements are not inconsistent with, vary, or contradict the terms of the provision. The trial court did not act improperly in relying on the trust agreements.

■ We now consider whether the owners are the designated owners as required by Section 3(a) of Hallmark's employment contract. The disputed language in Section 3(a) concerns the meaning of the terms "heirs" and "lineal descendants." Appellant urges that the definition of "heirs" and "lineal descendants" is the issue of a deceased person; therefore, Mrs. Hallmark's heirs cannot be determined until her death. Port/Cooper argues that although the technical meaning of the terms is restricted to the issue of a deceased ancestor only, pursuant to the rules of contract construction, the terms should be given their ordinary, popular, and commonly accepted meaning, that being the children of both living and deceased persons, since the contract does not show that the terms are to be used in a technical sense.

■ When a case involves the interpretation of a contract and the contract is found to be unambiguous, a summary judgment is proper. *RGS, Cardox Recovery, Inc. v. Dorchester Enhanced Recovery Co.,* 700 S.W.2d 635, 638 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). If the contract can be given a certain or definite legal meaning or interpretation, then it is not ambiguous and the court will construe the contract as a matter of law. *Coker v. Coker,* 650 S.W.2d 391, 393 (Tex.1983); *Corriveau v. 3005 Investment Corp.,* 697 S.W.2d 766, 767 (Tex.

App.—Corpus Christi 1985, writ ref'd n.r.e.). The contractual provision, however, is ambiguous if its meaning is uncertain and doubtful and it is reasonably susceptible to more than one interpretation. *Coker*, 650 S.W.2d at 393; *RGS, Cardox Recovery*, 700 S.W.2d at 638. Whether a contract is ambiguous is a question of law for the court to decide by looking at the contract as a whole in light of the circumstances present when the contract was entered. *Coker*, 650 S.W.2d at 394; *R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 518 (Tex.1980). When a contract contains an ambiguity, the granting of a motion for summary judgment is improper because the interpretation of the instrument becomes a fact issue. *Coker*, 650 S.W.2d at 394.

In construing contracts, the primary concern of the court is to ascertain the true intention of the parties as expressed in the instrument. *Id.* at 393; *R & P Enters.*, 596 S.W.2d at 518. In ascertaining the true intention of the parties, the courts will examine and consider the entire writing, seeking as best they can, to harmonize and to give effect to all the provisions of the contract so that none will be rendered meaningless. *Universal C.I.T. Credit Corp. v. Daniel*, 150 Tex. 513, 243 S.W.2d 154, 158 (1951); *Corriveau*, 697 S.W.2d at 767. "No single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." *Coker*, 650 S.W.2d at 393. Language used by parties in a contract should be accorded its plain, grammatical meaning unless it definitely appears that the intention of the parties would thereby be defeated. *Lyons v. Montgomery*, 701 S.W.2d 641, 643 (Tex.1985).

In construing this provision in order to ascertain the intent of the parties and give effect to Section 3(a) and not render it meaningless, we will apply the meaning of "lineal descendants" as advocated by Port/Cooper. Hallmark entered into an employment contract with Port/Cooper. Section 3 sets out the circumstances under which Hallmark's employment may be terminated. Specifically, Section 3(a) provides for Hallmark's termination without cause. One of the conditions precedent for the implementation of this clause is that 50% of the outstanding partnership interests must be owned by the Port shareholders who are defined as, among other people, Hallmark and her heirs and lineal descendants. We have already held that the beneficiaries of the Hallmark trust, her daughter and grandchildren, are the real owners of the stock. Thus, the question is whether they are Hallmark's heirs and lineal descendants.

"Descendant," according to its legal and lexicographical meaning, designates the issue of a deceased person and does not describe the issue of a living person. *Parrish v. Mills*, 101 Tex. 276, 106 S.W. 882, 886 (1908); *Reilly v. Huff*, 335 S.W.2d 275, 279 (Tex.Civ. App.—San Antonio 1960, no writ). However, in a popular sense the word is sometimes used to denote the issue of a living person. *Parrish*, 106 S.W. at 886; *Reilly*, 335 S.W.2d at 279. As a result, the *Parrish* court looked to the entire instrument in ascertaining whether the grantor of the trust intended to use the term in the technical or popular sense. *Parrish*, 106 S.W. at 886.

If the terms mean the issue of a deceased person, then Hallmark's daughter and grandchildren may not be characterized as such since heirs and lineal descendants are not determinable until the death of the ancestor. Under this theory, because they are neither heirs nor lineal descendants, they do not qualify as Port shareholders, and the condition precedent in Section 3(a) fails. According to Hallmark's argument, her employment may only be terminated when she dies, the time at which her heirs and lineal descendants can be determined. However, termination due to death is addressed in Sections 3(e) and 6. The construction urged by appellant renders the provision meaningless since a full consideration of the provisions indicates the parties intended to provide a means for the termination of an employee without cause. Port/Cooper need not terminate Hallmark's employment after her death. Thus, in order to harmonize and give full effect to all of the provisions, we will apply the plain, grammatical meaning of the terms. Accordingly, we find that "heirs" and "lineal descendants," as used in this particular employment

contract, mean the issue of a living or deceased person. Therefore, Hallmark's daughter and grandchildren are her lineal descendants.

As for the Hall Family Trusts, Hall's daughter is the trustee, and the beneficiaries are his daughter and grandchildren. Since Hall has died, there should be no dispute as to who his lineal descendants are.

Therefore, even assuming that "heirs" mean the issue of a deceased person only, as suggested by appellant, the conditions of Section 3(a) were satisfied still since the owners of the stock in the trusts fall within one of the provision's specified classes of owners— lineal descendants. Having met the conditions of Section 3(a), Hallmark was validly terminated.

Hallmark next alleges that Darlene Starnes, by virtue of their family and long term relationship, owed her a fiduciary duty which she violated when she agreed to the termination. According to Hallmark's argument, her fiduciary relationship with Starnes created an implied covenant of good faith and fair dealing to the contract and imposed a good cause requirement for termination.

Firstly, we find this argument contradicts her "integration clause" argument that the agreement be enforced by its literal terms. After arguing for the integration clause and that the contract is unambiguous, Hallmark next argues that, in interpreting the contract, we should add consideration of a good cause provision and an implied covenant of good faith and fair dealing. To do so would require us to add extrinsic factors to an otherwise unambiguous agreement. We decline to do so.

The agreement provided that the term of her employment was for ten years "[s]ubject to being sooner terminated as provided in this [a]greement. . . ." Contracts containing such unambiguous clauses merely limit the original term of employment and are not in conflict therewith. *NHA, Inc. v. Jones,* 500 S.W.2d 940, 943 (Tex.Civ.App.—Fort Worth 1973, writ ref'd n.r.e.). Such contracts have been determined to be at-will contracts for designated or lesser terms, as shall be determined by the employer. *Id.* Section 3(a) unambiguously states that Hallmark's employment could be terminated upon the unanimous decision of the partnership, thereby precluding a good cause requirement for termination.

Secondly, in regard to Hallmark's assertion of an implied covenant of good faith and fair dealing, the supreme court expressly rejected an invitation to recognize such an implied covenant in the context of employment relationships. *Federal Express Corp. v. Dutschmann,* 846 S.W.2d 282, 284 n. 1 (Tex.1993); *English v. Fischer,* 660 S.W.2d 521, 522 (Tex.1983).

Thirdly, Hallmark contends that Starnes owed her a fiduciary duty based on their pattern of informal relationships over a long period of time. Informal fiduciary relationships, also termed "confidential relationships," may arise where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one. *Crim Truck & Tractor v. Navistar Int'l Transp. Corp.,* 823 S.W.2d 591, 594 (Tex.1992). The law recognizes the existence of confidential relationships in those cases in which influence has been acquired and abused and in which confidence has been reposed and betrayed. *Id.* However, the fact that the relationship has been a cordial one, of long duration, does not necessarily constitute a confidential relationship. *Id.* at 595. Mere subjective trust and a cordial friendship are insufficient to create a fiduciary relationship. *Id.; Thigpen v. Locke,* 363 S.W.2d 247, 253 (Tex.1962).

Here, Starnes and Hallmark had a friendship over the years. This is not enough to entrust Starnes with a duty of good faith and fair dealing in matters concerning Hallmark's employment with Port/Cooper.

Accordingly, we overrule appellant's point of error and affirm the judgment of the trial court.