**Robert E. RIDGELL, Appellant,**

v.

**Nona Gay RIDGELL, Appellee.**

No. 13–95–384–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 16, 1997.

Wanda Roberts, Garner, Roberts & Roberts, Port Lavaca, for Appellant.

William D. Tipton, Houston, Dan W. Heard, Port Lavaca, for Appellee.

Before SEERDEN, C.J., and YANEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Justice.

This is an appeal of the division of a marital estate upon a final decree of divorce following a trial to the court. By two points of error, appellant, Robert E. Ridgell, challenges the trial court's characterization of various assets as the separate property of appellee, Nona Gay Ridgell, including the income from her trusts, by which the contested assets were purchased. We reverse and remand for a new division of the estate.

### FACTUAL AND PROCEDURAL HISTORY

Robert and Nona Gay Ridgell married in 1978, after both spouses had been married before. Nona's previous marriage to Tom Brown, by which she had three children, Kathy Brown, Lester Brown, and Trace Brown, had ended that same year.[1] Robert and Nona separated in December 1989, and Robert filed for divorce on March 25, 1991. No children were born to the couple. The cause came for a hearing before the court on August 31, 1994. Subsequent facts relevant to our disposition of this case may be grouped into three categories: the financial resources of the litigants; real properties on

---

1. Nona acquired some of the assets at issue in this case under the name "Nona Gay Carr Brown."

hand at the dissolution of marriage; and the division of the estate by the trial court.

*Resources of the Couple.* Nona's parents, Robert Gay Carr and Nona Kathryn Carr, owned large royalties from the production of oil and gas in west Texas. When Nona reached twenty-one years of age in 1959, her father filed a final account in her guardianship, by which she received 504 shares of stock in Gulf Oil, 200 shares of stock in Texas Gulf Sulphur, $52,807.56 in savings, plus cash and savings bonds worth $28,643.18. She also began to receive $400 per month in income from a trust established for her benefit by her parents (hereinafter "Trust # 1"). Nona received the monthly income from Trust # 1 until 1977, when it was exhausted. In 1967, Nona purchased a certificate of deposit (CD) in the amount of $100,000.00.

Nona's father died in 1978, and her father's will established a testamentary trust naming Nona a lifetime beneficiary and her children remaindermen (hereinafter "Trust # 2"). In 1984, while married to Robert, Nona used her separate-property $100,000.00 certificate of deposit to establish a grantor trust (hereinafter "Trust # 3") for the purpose of securing a loan to acquire the Krazy K Stables for her divorced daughter, Kathy, and for Kathy's child. (Nona purchased the stables in 1987 for the price of $170,000.00) Nona's mother died in 1987, and her will also established a testamentary trust naming Nona lifetime beneficiary and any grandchildren remaindermen (hereinafter "Trust # 4").

Robert's employment background is in mechanical work and construction. When he married Nona, he had a separate bank account where he placed his earnings. After marrying Nona, Robert continued working until September 1987. After he and Nona separated in December 1989, he returned to work. Robert has the business name "Rob Roy Enterprises" for a mechanical shop in Port O'Connor, Texas, which he purchased during the marriage.[2] He testified that Nona was generous during the marriage. She offered, for example, to buy him a Fer-

rari for his fiftieth birthday. He testified that he did not question Nona about her financial holdings, and that Nona paid the bills on the house, their living expenses, and the expenses of her children.

*Real Properties.* Nona owned the "Penn Hills" residence in Clear Lake, Texas, prior to her marriage to Robert. Before marrying Nona, Robert never owned any real estate. Nona purchased the Krazy K Stables (for her daughter) in 1987 for the price of $170,-000. In 1987, Robert and Nona bought a marina home in Port O'Connor, known as "St. Christopher's Haven."

In 1988, Nona purchased several more properties. She purchased the "Villa Rose" residence in Harris County, Texas, for her son, Trace Brown, and his family. She purchased 2.68 acres in Wiesner, Louisiana, for her daughter, Kathy, and Kathy's family, and contracted for the construction of a house on the property. She purchased the "Scenic View" residence in Harris County for her son, Lester Brown, and sold it in 1990 at a loss.

Robert currently owns some boat sheds in Port O'Connor in addition to the mechanical shop for his business.

*Division of the Estate at Trial.* By the final decree of divorce signed on May 12, 1995, Nona was awarded as her separate property, in part, the Scenic View, Villa Rose, and Wiesner, Louisiana, properties, Krazy K Stables and the adjoining one-acre tract, the Penn Hills residence, and half of the St. Christopher's Haven marina under a tenancy-in-common. Robert was awarded the other half-interest in the marina as his separate property. Nona also was awarded all income received or applied at her direction from the trusts established by her parents. Among its conclusions of law, the trial court determined (1) that "the distributions from the trusts in question were separate in character when received in the hands of Nona Gay Ridgell or applied at her direction making purchases of property therefrom separate property," and (2) that the

---

2. It appears, on the basis of appellant's testimony, that, despite the business name, the business

has not materialized.

homes purchased by down payments from the trusts, upon which notes of the house paid by direct deduction from the trust distributions, are Nona's separate property. The court further concluded that Nona did not have separate-property interests in the testamentary trusts established by her parents.

## ANALYSIS

■ Appellant complains of the division of the marital estate by the trial court. The trial court is vested with broad discretion in dividing the marital estate at divorce. *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex.1981); *Vannerson v. Vannerson*, 857 S.W.2d 659, 672–73 (Tex.App.—Houston [1st Dist.] 1993, writ denied). Equal division of the estate is not required. *In re Marriage of Jackson*, 506 S.W.2d 261, 267 (Tex.Civ.App.—Amarillo 1974, writ dism'd). Upon appeal, it is presumed that the trial court exercised its discretion properly, and the cause will be reversed only where there is a clear abuse of discretion. *In re Marriage of Long*, 542 S.W.2d 712, 716 (Tex.Civ.App.—Texarkana 1976, no writ). A clear abuse of discretion is shown only if the division of property is manifestly unjust and unfair. *Trevino v. Trevino*, 555 S.W.2d 792, 802 (Tex.App.—Corpus Christi 1977, no writ). A court of appeals should remand the entire community estate for a new division when it finds reversible error in a specific part of the division that materially affects the trial court's "just and right" division of the property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 732 (Tex.1985).

By his first point of error, appellant claims that the trial court erred in characterizing various assets as appellee's separate property. Though not specified at first, the course of appellant's argument reflects that he specifically challenges the trial court's findings that the Villa Rose, Scenic View, and Wiesner (Louisiana) homes are—or, in the case of Scenic View, was—appellee's separate property. By his second point of error, appellant contends that the trial court erred when it "improperly characterized the disbursement of funds from the trust [sic] to [a]ppellee as her separate property." There obviously is more than one trust implicated in this case,

and, as his argument proceeds, it becomes evident that appellant means to refer to more than one trust. Indeed, appellant contends that the funds distributed from appellee's trusts are community property, because (1) the principal of the trusts may be invaded at the discretion of the trustee for the benefit of appellee, (2) the trust instruments provide for mandatory distributions of part of the trust corpus to appellee on certain dates, (3) the trust settlors did not make it clear that the trust incomes may not become community property, and (4) appellee equitably owned the trusts, and income from a separate-property equitable interest is community property under the Texas Constitution.

Because the alleged error in the division of the estate is claimed to be the result of error in the characterization of the trust income, we will begin our analysis with point of error two; and for reasons less numerous or complex than those tendered by appellant, we will agree that, to a limited extent, the trial court erred in characterizing the funds distributed from the trusts as appellee's separate property.

### *The Trust Income*

■ A trust is a method used to transfer property. *Jameson v. Bain*, 693 S.W.2d 676, 680 (Tex.App.—San Antonio 1985, no writ). The beneficiaries of a valid trust become the owners of the equitable or beneficial title to the trust property and are considered the real owners. *Hallmark v. Port/Cooper–T. Smith Stevedoring Co.*, 907 S.W.2d 586, 589 (Tex.App.—Corpus Christi 1995, no writ) (quoting *City of Mesquite v. Malouf*, 553 S.W.2d 639, 644 (Tex.Civ. App.—Texarkana 1977, writ ref'd n.r.e.)). The trustee is vested with legal title and right of possession of the trust property, but holds the property for the benefit of the beneficiaries. *Hallmark*, 907 S.W.2d at 589; *Jameson*, 693 S.W.2d at 680. Under a discretionary trust, nevertheless, the beneficiary is entitled only to the income or principal that the trustee, in its discretion, shall distribute to him. *Kolpack v. Torres*, 829 S.W.2d 913, 915 (Tex.App.—Corpus Christi 1992, writ denied). The beneficiary cannot

compel the trustee to pay him or apply for his use any part of the trust property. *Id.*

A spouse's separate property consists of the property owned or claimed by the spouse before marriage, acquired by the spouse during the marriage by gift, devise, or descent, and the recovery for personal injuries sustained by the spouse during marriage (except for recovery for loss of earning capacity). · TEX. FAM.CODE ANN. §§ 5.01(a), (b), (c) (Vernon 1996). Property acquired in exchange for separate property becomes the separate property of the spouse who exchanged the property. *Dixon v. Sanderson,* 72 Tex. 359, 10 S.W. 535, 536 (1888); *Newland v. Newland,* 529 S.W.2d 105, 107 (Tex. Civ.App.—Fort Worth 1975, writ dism'd). Trust income which a married beneficiary does not receive, and to which he has no claim other than an expectancy interest in the corpus, has been held to constitute separate property. *Cleaver v. George Staton Co., Inc.,* 908 S.W.2d 468, 470 (Tex.App.—Tyler 1995, writ denied); *In re Marriage of Long,* 542 S.W.2d at 718; *Currie v. Currie,* 518 S.W.2d 386, 389 (Tex.Civ.App.—San Antonio 1974, writ dism'd); *see also In re Marriage of Burns,* 573 S.W.2d 555, 557–58 (Tex.Civ. App.—Texarkana 1978, writ dism'd).

Community property consists of the property, other than separate property, acquired by either spouse during marriage. TEX. FAM.CODE ANN. § 5.01(b) (Vernon 1996). Earnings from the separate estate of one spouse are community property. *Maben v. Maben,* 574 S.W.2d 229, 232 (Tex.Civ.App.— Fort Worth 1978, no writ). Income received by a married beneficiary on the trust corpus to which the beneficiary is entitled, or becomes entitled, is community property. *In re Marriage of Long,* 542 S.W.2d at 718; *Mercantile National Bank at Dallas v. Wilson,* 279 S.W.2d 650, 654 (Tex.Civ.App.— Dallas 1955, writ ref'd n.r.e.); *see also Wilmington Trust Co. v. United States,* 4 Cl.Ct. 6, 12 (1983), *aff'd,* 753 F.2d 1055 (1985) (reviewing the distinctions between Texas cases in which trust income to a married beneficiary is separate property and those in which it is community property).

Our threshold inquiry must be the relationship between appellee, the testamentary trusts, and the trust incomes. If the trust property may be considered her separate property, then the income it generated during the marriage may constitute community property. If appellee receives income distributions from the trusts, the income must be community property. If appellee does not receive income from the trusts and has no more than an expectancy interest in the corpuses, the income remains separate property. If it may be said that the contested properties were acquired on the basis of separate credit or separate property, the acquired property would be separate property.

The trust instruments for Trusts # 2 and # 4 have identical operative language.[3] By

---

3. Robert Gay Carr's (and Nona Kathryn Carr's) will provides, in part:

During the lifetime of my daughter, Nona Gay Carr Brown, the Trustee shall pay to or apply for the benefit of my daughter the entire net income of the trust, quarterly-annually or monthly as my daughter may from time to time elect. If the Trustee deems the income of the trust to be insufficient, the Trustee shall, from time to time, pay to or among or apply for the benefit of my daughter and my grandchildren as much of the corpus of the trust as the Trustee in the Trustee's discretion deems appropriate for their proper support, care and maintenance in reasonable comfort in accordance with their accustomed manner of living after taking into consideration, to the extent the Trustee deems advisable, any income or resources of such beneficiaries, outside this trust, know to the Trustee and reasonably available for these purposes. In exercising its discretion to invade corpus, the Trustee may

pay more to or apply more for some beneficiaries than others and may make payments to or applications of benefits for one or more beneficiaries, to the exclusion of others if the Trustee deems this necessary or appropriate ... The Trustee shall be mindful, however, that my primary concern in establishing this trust is my daughter's welfare and the welfare of my grandchildren while they are under age thirty (30), ... Notwithstanding the other provisions of this paragraph, the Trustee shall withhold from the income an amount estimated by the Trustee, based upon facts known to the Trustee, sufficient to pay income taxes incurred by my daughter by reason of the income received by her from the trust and shall distribute or apply such amount in a manner calculated to satisfy her liability for such taxes. As soon as reasonably convenient after each of my daughter's eleven (11) birthdays on which she is living, beginning with her fortieth birthday and ending with her fiftieth birthday, the Trustee

the trust instruments for trusts # 2 and # 4, the remainders of Nona's father's and mother's estates are bequeathed to San Angelo National Bank as trustee (which is now doing business as Texas Commerce Bank—San Angelo). Each trustee is directed to pay Nona the entire net income from the trust as often as monthly, if Nona so elects. If the trustee deems the income of the trust insufficient, the trustee is directed to pay to Nona or to the settlor's grandchildren as much from the corpus of the trust as is appropriate in the trustee's discretion. Beginning with Nona's fortieth birthday and ending with her fiftieth, the trustee is instructed to distribute to Nona the lesser of $25,000 or 3% of the corpus of the trust after each of the eleven birthdays on which she is living. Hence the testamentary trusts grant to Nona possessory interests in the net incomes of the trusts and expectancy interests in the trust corpuses, revealing, at least *prima facie*, that the trust incomes during the marriage are community property. Because appellee became a beneficiary by devise, her separate estate has equitable title to the trusts generally.

The trusts do contain spendthrift clauses stipulating that no beneficiary of the trust may transfer, assign, convey, sell, pledge, mortgage, alienate, or encumber any part of the corpus or income of the trusts, but these clauses do not limit appellee's right to possess the trust income or installments of the corpus, or use them freely, once they are distributed.

The trust settlors, Nona's parents, also indicated that their primary concern in establishing the trusts was the welfare of their daughter and grandchildren; but, absent more, we find nothing in the instruments operating so as to preclude the trust income from becoming community property in the event of Nona's marriage. TEX. FAM.CODE ANN. § 5.01(b) (defining community property); *see also Commissioner of Internal Revenue v. Porter*, 148 F.2d 566, 568 (5th Cir. 1945) (departure from general rule in Texas that income from separate property becomes community property, in the context of a distribution from a trust instrument, must be in a precise and definite way, with language of "unmistakable intent").

That Nona received income distributions from the trusts during her marriage to Robert is both undisputed and a matter of record. Therefore, because Nona received the income from Trusts # 2 and # 4 and has expectancy interests in the trust corpuses, we hold that the trial court erred in concluding that the income distributions from Trusts # 2 and # 4 were Nona's separate property; the incomes are community property. *Cf. In re Marriage of Long*, 542 S.W.2d at 718.

To the extent the trial court characterized the "distribution" from Trust # 3 to Nona as separate property, however, it was correct. There is documentary and testimonial evidence on record that Nona purchased a $100,000.00 certificate of deposit (CD) in 1967; that on January 9, 1984, she established the Nona Gay Carr Brown Trust through Texas Commerce Bank in San Angelo; that on January 17, 1984 she transferred the CD to Texas Commerce Bank as collateral for a loan to the Nona Gay Carr Brown Trust for the purchase of Krazy K Stables; and that monies from her guardianship also were used to fund the trust.

Appellant contends that this evidence of separate-property funding is less than clear and convincing because, while one of appellee's witnesses testified that the $100,000.00 CD funded Trust # 3, another testified that the source of funding was the CD plus proceeds from the sale of appellee's Gulf Oil stock and other assets she received per the guardianship filed by her father when she turned age twenty-one. Appellant further argues that the acquisition of stock since

---

shall distribute to my daughter the lesser of Twenty-five Thousand Dollars ($25,000.00) or three percent (3%) of the corpus of the trust as the trust is constituted on each such birthday. If any of such birthdays of my daughter shall have occurred at the time when the trust is established, and if my daughter is then living, the Trustee shall, as soon as reasonably convenient after establishment of the trust, distribute to my daughter such amount or amounts as are directed to be distributed to her upon such birthdays as have occurred. I recommend to my daughter that as often as reasonably practical, and in all events in making any major decisions, she should advise and counsel with the Trustee and the attorney for my estate for advice and guidance in making business and personal decisions.

1959 is not traced and that the methods of acquisition available could result in the stock that was sold in 1984 being either separate or community property.

Appellee concedes that more than the CD funded Trust # 3. Both the CD and sources of funds for the trust beyond the CD, nevertheless, also were her separate property. The guardianship monies were given to Nona when she turned twenty-one, in 1959, nineteen years before marrying appellant; they therefore were separate property. TEX. FAM. CODE ANN. § 5.01(a)(1). Appellee's tracking of her shares of stock in Gulf Oil and dividends, moreover, is on record and reveals the acquisition of stock to be by dividends. Stock received by dividends on stock purchased by a spouse prior to marriage remains the separate property of the spouse. *Tirado v. Tirado,* 357 S.W.2d 468, 473 (Tex. Civ.App.—Texarkana 1962, writ dism'd). We hold that the corpus of Trust # 3 is appellee's separate property.

Trust # 3 is an income-generating trust, nevertheless, and, as appellant argues, any income distributed from this trust to appellee and used to purchase Krazy K Stables, could make the stables community property. We decline to rule in this direction, because there is undisputed evidence that the loan for the purchase of the stables was extinguished with separate-property deposits to the trust, rather than trust-income. By a check dated May 15, 1984, proceeds from the sale of appellee's separate-property stock were used to extinguish the loan; hence separate property begat separate property. Thus, necessarily reaching an issue raised under point of error one, we hold the trial court did not err in concluding that Krazy K Stables are appellee's separate property. *Cf. Dixon,* 10 S.W. at 536; *Newland,* 529 S.W.2d at 107.

The one-acre tract adjacent to the Krazy K Stables also is Nona's separate property. On record is undisputed testimonial evidence that this tract of land was purchased with funds generated by the separate-property $100,000.00 CD appellee used to establish Trust # 3. Billie Timm, who is employed by the trusts as custodian of appellee's records, testified that after Nona paid off the loan for Krazy K Stables, the Trust Department of Texas Commerce Bank returned to Nona the $100,000.00 she used to establish the trust, and with it Nona purchased another $100,-000.00 CD. This latter incarnation of the CD was used to purchase the lot, which cost only $39,000.00. The trial court did not err in finding that the one-acre tract is appellee's separate property.

Although we do not find error in the characterization of income from trust # 3, we did hold that the court mischaracterized the income from trusts # 2 and # 4. We therefore sustain point of error two. Trust # 1 was exhausted prior to appellant's marriage to appellee, so we presume it is not in issue here.

*Characterization of Other Assets*

By his first point of error, appellant contends that the trial court erred in the characterization of the three homes, Krazy K Stables, and the adjacent lot purchased during the marriage as appellee's separate property. Appellee argues that the properties were purchased on her separate credit or with separate funds and are therefore separate property. By our disposition of point of error two, we determined that the stables and adjoining acre of land were purchased with Nona's separate property and therefore are her separate property, so we need not examine this matter further. As to the characterization of the remainder of the contested assets, we will agree with appellee to a limited degree.

■ Beneficiaries of valid trusts, as we noted earlier, are the owners of the equitable or beneficial title to the trust property and are considered real owners. *See Hallmark,* 907 S.W.2d at 589. In the instant case, the record is replete with testimonial and documentary evidence that the trustee for Trust # 4 lent appellee money for the purchase of the contested residencies and was looking solely to her for repayment of the loans. Note payments were deducted from the trust income before it was distributed to her. As beneficiary of the trust, therefore, appellee essentially was borrowing against her own money in order to acquire new property, making the acquired property also her sepa-

rate property. *Cf. Dixon,* 10 S.W. at 536; *Newland,* 529 S.W.2d at 107. The Wiesner and Villa Rose properties, in fact, were deeded by the trust to Nona as her separate property, creating a rebuttable presumption in favor of her separate estate. *See Kahn v. Kahn,* 94 Tex. 114, 58 S.W. 825, 826 (1900). Appellant in no way challenges appellee's evidence that she borrowed the purchase money for these residencies from the trust. We hold that the trial court did not err in awarding the Scenic View, Wiesner, and Villa Rose residencies to appellee's separate estate.

■ The community estate, however, may be entitled to reimbursement for expenditures that enhanced the value of appellee's separate estate. The notes on the homes were paid out of trust income, which we determined to be community property; and expenditures from the community estate for the enhancement or benefit of one spouse's separate estate may require that the community estate be reimbursed the expenditures. *See Colden v. Alexander,* 141 Tex. 134, 171 S.W.2d 328, 334 (1943). The trial court erred in failing to recognize that Nona's possessory interest in the income of these trusts requires that the income be treated as comparable to the income of any spouse during marriage in a community property jurisdiction—*i.e.,* as community property. Where a judicial tribunal is unable to recognize that such income is community property, we will not infer from appellant's aloofness toward appellee's purchases of the homes an intent to make a gift of his community property to her separate estate. We hold that the community estate may be entitled to reimbursement for the trust income expended toward the purchases of the three homes. Point of error one is sustained.

A right of reimbursement to the community estate materially could affect the trial's court "just and right" division of the marital estate. Accordingly, the judgment of the trial court is reversed, and we remand for a new division of the estate consistent with this opinion.