

# NUMBER 13-18-00007-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

### THE ESTATE OF LEROY T. KEENER, DECEASED

**On appeal from the County Court at Law
of San Patricio County, Texas.**

## MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria
Memorandum Opinion by Chief Justice Contreras**

Appellees Norma Smith and Dale Keener filed an application for a proceeding to declare heirship as to Leroy A. Keener's estate. *See* TEX. EST. CODE ANN. § 202.005 (West, Westlaw through 2017 1st C.S.). Appellant Maurice A. Yarter filed a plea in intervention, and he appeals the trial court's denial of his plea. By two issues, Yarter argues that (1) he had a justiciable interest in the proceeding and (2) the trial court erred by ruling on the merits. Because we conclude the trial court abused its discretion when it denied Yarter's intervention, we reverse and remand.

## I. BACKGROUND

Keener passed away intestate from ALS in June 2016. In January of 2015, Keener established the ELTEKAE trust with himself as the trustee and his friend Yarter as the beneficiary. Just prior to his death, according to Yarter, Keener informed a mutual friend, Bud Fuchs, that a blue folder at his home contained his will, but no will was ultimately found. Instead, the trust documents were found in the blue folder. Fuchs gave the blue folder to Yarter, and Yarter gave the folder to his attorney. Keener established the trust with the assistance of an attorney, Dick Crownover.

Crownover advertises "NFA gun trusts" at gun shows across Texas.[1] In his promotional materials, Crownover advertises his gun trusts as vehicles used to easily transfer federally regulated firearms upon death and also as a way to legally share the use of a federally regulated category III asset, such as a silencer or suppressor, among multiple individuals. The terms of Crownover's trusts, however, do not limit the trust property to only firearms. In the presence of Crownover and two other witnesses, Keener executed and funded the trust with a one-dollar bill. Both witnesses signed the trust documents, which were notarized by Crownover. A few days later, Keener and Yarter executed an "acceptance of trustee application & appointment of additional trustee," which added Yarter as an additional trustee to the trust. Crownover also assisted Keener in adding a suppressor to the trust.

---

[1] The National Firearms Act (NFA) requires that firearms be registered and imposes specific procedures for their transfer. *See* 26 U.S.C.A. §§ 5812, 5841(b) (West, Westlaw through P.L. 115-281). A silencer, for example, is a firearm covered by the NFA. *See id.* § 5845(a) (West, Westlaw through P.L. 115-281); *see also* 18 U.S.C.A. § 921(a)(24) (West, Westlaw through P.L. 115-281) (defining firearm silencer). The unlawful possession or transfer of an NFA firearm is punishable with hefty fines and imprisonment. *See* 26 U.S.C.A. §§ 5861(b), (d), (e), 5871 (West, Westlaw through P.L. 115-281). One of the biggest advantages of an NFA trust is that any of its trustees can lawfully possess the federally regulated firearm. Sean P. Healy, *National Firearms Act (NFA) Trusts*, STATE BAR OF TEX. CLE, ch. 8, p. 27 (2016).

Under the terms of the trust, Keener could add any real and personal property to it, and the trust did not specify how property was to be added. According to Crownover, he sends his clients a PDF with blank supporting documents after a trust is established, and he intends for his clients to use an "assignment of assets" form in the PDF to add additional property to the trust. A one-page copy of a "Schedule A" is also included in the PDF. Section 7.17 of the trust was titled "Schedule A" and it provided: "Schedule A is incorporated by reference herein and made a part of the trust for all purposes. Schedule A, entitled 'Trust Assets & Acknowledgment of Funding,' shall represent evidence that this trust is funded and contains the assets to which it purports to contain."

Keener's next of kin, appellees, lived in Illinois and, during the last year of his life, interacted with Keener mostly via email, as Keener's disease prevented him from communicating verbally. After Keener passed away, he was buried without notice to his family, and Yarter disposed of the majority of Keener's personal property. Yarter alleges that Keener told him and other friends that he did not want his family to be present at his funeral or for them to have a share of his estate. After learning of Keener's passing through Facebook, appellees immediately traveled to Texas, where they met with Yarter and were informed of these facts and that no will had been found. Appellees were surprised to hear what Yarter alleged Keener wanted, and they consulted with an attorney.

Yarter attempted to probate the trust documents as a will, but he eventually non-suited that claim. As part of those proceedings, the parties deposed Crownover regarding the trusts he promoted and his interactions with Keener. After Yarter non-suited the claim, appellees filed the underlying application for a proceeding to declare heirship. Yarter filed

3

a plea in intervention and alleged he had a justiciable interest in the proceeding. Yarter produced the trust documents, including a copy of a "Schedule A" titled "Trust Assets & Acknowledgment of Funding," which is the document underlying the dispute on appeal. The Schedule A put forth by Yarter was two pages long and included a footer on the first page that stated "Page 1 of 2." Page 1 of Schedule A is signed by Keener and notes that the trust has been funded by Keener with a one-dollar bill; that the trust includes "NFA-regulated asset(s) currently being registered with the" ATF; and that the trust includes "any other asset(s) currently recognized under the laws of the United States to be legitimate assets of a trust, which are owned by the ELTEKAE NFA Trust." Page 2 of this Schedule A purported to add to the trust all of Keener's personal and real property. Specifically, page 2 stated that the trust assets included seven handguns (including a Sparrow suppressor), four long guns, two vehicles, two bank accounts, and Keener's home. Page 2 is unsigned and titled "Scheudle A [sic] (cont'd) Trust Assets & Acknowledgment of Funding."

Appellees objected to Yarter's intervention and argued that: the trust was only a "gun trust" meant to allow Yarter to receive a suppressor; the identity of the witnesses who signed the trust were unknown[2]; the trust lacked the legal formalities and testamentary intent to add any property to the trust apart from a suppressor; and Keener's residence was not properly and legally added to the trust because the attempt to add the real property failed to comply with the statute of frauds.[3]

---

[2] In his deposition, Crownover stated he personally saw the two witnesses sign the respective documents.

[3] At the time of Keener's death, he had executed an earnest money contract for the sale of his home, and the funds from the sale are in the registry of the court. Yarter argues the proceeds from the sale of the house are personal property and, therefore, page 2 successfully added those proceeds to the trust. However, we note that page 2 of Schedule A did not state that the proceeds from the house were added to

At a hearing on Yarter's plea, the court heard testimony from Yarter, Norma, Bradley Smith (Norma's son), Julia Thomas (Keener's niece), and Mrs. Yarter. Crownover's deposition was also admitted as evidence.

In his deposition, Crownover explained that he had assisted Keener in creating the trust; that Keener had funded the trust with a one-dollar bill; and that he had assisted Keener in acquiring a tax stamp needed to purchase a Sparrow suppressor and subsequently added the suppressor to the trust. In regard to the Schedule A put forth by Yarter, Crownover provided the following testimony:

> It would appear . . . that page 1, entitled Schedule A, is an exact duplicate of what I watched Leroy sign in the signature line with one notable exception; and that is the footer. The footer now says page 1 of 2 pages, whereas on the exhibit that has been offered as exhibit 3, it says page 1 of 1 page. There is now a second page. On this page there is a copy of my footer from page 1. It does recite page 2 of 2 pages. There is above the footer various writings, handguns, long guns, vehicles, bank accounts, property. The title of the second page is Schedule A, parenthesis, c-o-n-t-'-d. I notice that schedule is misspelled. None of this second page did I prepare, have any knowledge of; and I don't know who prepared it. I just know that I did not. The change that I know on page 1 is page 1 of 2 pages. This does appear to me to be the same signature that is—appears to be an exact copy of mine with the exception—page 1 of mine with the exception of the footing.[4]

Yarter testified he had no knowledge regarding the origins of page 2 of Schedule A and that he was unaware of the total assets that Keener had placed in the trust. Yarter further testified that the only trust property he was aware of was the one dollar Keener used to fund the trust. Yarter denied that he was in possession of the suppressor which

---

the trust; instead, page 2 of Schedule A attempted to add the real property to the trust—i.e., the house itself. "A conveyance of an estate of inheritance, a freehold, or an estate for more than one year, in land and tenements, must be in writing and must be subscribed and delivered by the conveyor or by the conveyor's agent authorized in writing." TEX. PROP. CODE ANN. § 5.021 (West, Westlaw through 2017 1st C.S.); *see Gordon v. West Houston Trees, Ltd.*, 352 S.W.3d 32, 43 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

4 Crownover also testified that the ampersand used on page 2 was different from the ampersand he had used on page 1.

had been added to the trust and that no such suppressor had been found among Keener's belongings in his home. The hearing at the trial court focused on the origins of page 2 of schedule A, on how Keener's family learned he had passed away, whether in the family's opinion Keener would have wanted to exclude them from his estate, and on the interactions between Yarter and appellees and between appellees and Keener.

The trial court denied Yarter's plea in intervention and made the following oral findings on the record:

(1) the trust is a valid trust, and there is a question as to what property is included within the trust;

(2) no will has been discovered;

(3) Crownover's testimony that the document he prepared as Schedule A was only one page was uncontroverted;

(4) There is no evidence of who prepared the page 2 of 2 submitted, and there is no signature of Keener or anybody else;

(5) There is insufficient evidence, including the identity of the witnesses, to the signature of Mr. Keener to sufficiently determine his testamentary intent.

(6) There is insufficient evidence to determine testamentary intent regarding the property identified on page 2 of 2 of Schedule A.

This appeal followed.

## II.   DISCUSSION

By his first issue, Yarter argues he has a justiciable interest in appellees' proceeding to declare heirship.

## A.    Applicable Law & Standard of Review

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." TEX. R. CIV. P. 60. "The rule authorizes a party with a justiciable interest in a pending suit to intervene in the suit as a matter of right." *In re Union Carbide Corp.*, 273 S.W.3d 152, 154 (Tex. 2008) (per curiam). A party has a justiciable interest in the suit when its interests will be affected by the litigation. *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.); *see In re Union Carbide*, 273 S.W.3d at 155. That is, a party can intervene if it (1) could have brought all or part of the same suit in its own name or (2) would have been able to defeat all or part of the recovery if the suit had been filed against it. *Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g); *e.g., Jenkins v. Entergy Corp.*, 187 S.W.3d 785, 796–97 (Tex. App.—Corpus Christi 2006, pet. denied); *see In re Union Carbide*, 273 S.W.3d at 155. "Even when an intervenor has not or could not have been sued directly, if a judgment for the plaintiff may lead to an action against the intervenor or would otherwise seriously prejudice the intervenor, the intervention is necessary to assure a proper defense against the claim." *Jenkins*, 187 S.W.3d at 797.

An intervenor is not required to secure the court's permission to intervene and a party who opposes the intervention has the burden to challenge it by a motion to strike. *Guaranty Fed.*, 793 S.W.2d at 657; *In Interest of A.L.H.*, 515 S.W.3d 60, 83 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). If any party to the pending suit moves to strike the intervention, then the intervenor has the burden to show a justiciable interest in the pending suit. *In re Union Carbide*, 273 S.W.3d at 154–55; *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex. 1982); *In re Estate of York*, 951 S.W.2d 122, 126 n.3 (Tex. App.—Corpus

Christi 1997, no writ) ("[T]he intervenor should be given an opportunity to explain, and show proof of, its interest in the lawsuit."); *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Pennzoil Co.*, 866 S.W.2d 248, 250 (Tex. App.—Corpus Christi 1993, no writ) (concluding that "a motion to strike a plea in intervention is akin to a special exception or to a motion for summary judgment, asserting that, as a matter of law, the opposing party could not have brought the action or would not be able to defeat recovery").

While the determination of whether a justiciable interest exists based on the pleadings would appear to present a pure question of law, the ultimate determination of whether an intervention should be struck, even if a justiciable interest is shown, has long been held to be vested in the sound discretion of the trial court. *Zeifman v. Michels*, 229 S.W.3d 460, 465 (Tex. App.—Austin 2007, no pet.) (op. on reh'g) (citing *Tex. Dep't of Parks & Wildlife v. Miranda* (Tex. 2004)); *see In re Estate of Webb*, 266 S.W.3d 544, 548 (Tex. App.—Fort Worth 2008, pet. denied); *In re Estate of York*, 951 S.W.2d at 126. An abuse of discretion denotes acting without reference to guiding rules or principles; in other words, the act was arbitrary or unreasonable. *Zeifman*, 229 S.W.3d at 465 (citing *Worford v. Samper*, 801 S.W.2d 108, 109 (Tex. 1990)).

In *Guaranty Federal*, the Texas Supreme Court noted that, although the trial court has broad discretion in determining whether an intervention should be stricken, it is an abuse of discretion to strike a plea in intervention if (1) the intervenor has a justiciable interest, (2) the intervention will not complicate the case by an excessive multiplication of the issues, and (3) the intervention is almost essential to protect the intervenor's interest. *Guaranty Fed.*, 793 S.W.2d at 657. "While *Guaranty Federal* does identify a set of equitable conditions under which the striking of an intervention would be an abuse of

discretion, it does not . . . establish the 'only' or exclusive circumstances in which that would be so." *Zeifman*, 229 S.W.3d at 466. Furthermore, this Court has questioned "whether the rule in *Guaranty Federal*, which allows some discretion to strike the intervention, even applies to a probate proceeding in which interested parties attempt to assert claims which will otherwise be adjudicated against them in their absence." *Estate of York*, 951 S.W.2d at 126 (noting that "[p]robate proceedings are actions in rem and bind all persons unless set aside by law"). "In such case, it may be sufficient to defeat a motion to strike the intervention, merely to show a justiciable interest in the controversy as an interested party." *Id.* Under the Texas Estates Code, an interested person is "an heir, devisee, spouse, creditor, or any other having a property right in or claim against an estate being administered." TEX. EST. CODE. ANN. § 22.018 (West, Westlaw through 2017 1st C.S.).

## B.    Trusts

A trust is a mechanism used to transfer property. *Bradley v. Shaffer*, 535 S.W.3d 242, 247 (Tex. App.—Eastland 2017, no pet.); *Hallmark v. Port/Cooper-T. Smith Stevedoring Co.*, 907 S.W.2d 586, 589 (Tex. App.—Corpus Christi 1995, no writ). Generally, to create a trust in real or personal property, the terms of the trust must be in writing and be signed by the settlor or the settlor's authorized agent. TEX. PROP. CODE ANN. § 112.004 (West, Westlaw through 2017 1st C.S.). An inter vivos trust is a trust that is created and takes effect during the settlor's lifetime. BLACK'S LAW DICTIONARY 1744 (10th ed. 2014); *see Glassman v. Goodfriend*, 347 S.W.3d 772, 779 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *see also* TEX. PROP. CODE ANN. § 111.004(14) (West, Westlaw through 2017 1st C.S.) (defining settlor). An inter vivos trust is typically created

by (1) a declaration of trust, by which the property owner establishes a trust and declares himself or herself to be trustee, or (2) an agreement of trust, by which the property owner establishes a trust and names a third party to be the trustee. *See* TEX. PROP. CODE ANN. § 112.001(1), (2) (West, Westlaw through 2017 1st C.S.). Also, a trust cannot be created unless there is trust property, *id.* § 112.005 (West, Westlaw through 2017 1st C.S.), and the settlor must manifest an intention to create a trust. *Id.* § 112.002 (West, Westlaw through 2017 1st C.S.). However, no testamentary intent is required for an inter vivos trust.[5] *See id.*; *In re Estate of Canales*, 837 S.W.2d 662, 665 (Tex. App.—San Antonio 1992, no writ) (noting that, when the trust is created during the lifetime of the settlor, the trust is not testamentary and may be created without compliance with the requirements for the execution of a will); *cf. Land v. Marshall*, 426 S.W.2d 841, 844 (Tex. 1968) ("If the death of the trustor is a condition precedent to the creation of a trust, the requirements for the execution of a will must be met . . . .").

When a valid trust is created, the beneficiaries become the owners of the equitable or beneficial title to the trust property and are considered the real owners. *Bradley*, 535 S.W.3d at 248; *Hallmark*, 907 S.W.2d at 589. The trustee is vested with legal title and right of possession of the trust property but holds it for the benefit of the beneficiaries, who are vested with equitable title to the trust property. *Hallmark*, 907 S.W.2d at 589. Acceptance by the trustee of an interest in a trust is presumed. TEX. PROP. CODE ANN. § 112.010 (West, Westlaw through 2017 1st C.S.). Finally, "[p]roperty may be added to an existing trust from any source in any manner unless the addition is prohibited by the

---

[5] Testamentary intent is required for a valid will—that is, the testator must execute the document with the intent to make it a will. *Hinson v. Hinson*, 280 S.W.2d 731, 733 (Tex. 1955); *In re Estate of Graham*, 69 S.W.3d 598, 608 (Tex. App.—Corpus Christi 2001, no pet.).

terms of the trust or the property is unacceptable to the trustee." *Id.* § 112.006 (West, Westlaw through 2017 1st C.S.).

**C.    Analysis**

Here, appellees objected to Yarter's plea in intervention. Thus, the burden shifted to Yarter to prove his justiciable interest in the proceeding. *See In re Union Carbide*, 273 S.W.3d at 155; *Mendez*, 626 S.W.2d at 499; *Estate of York*, 951 S.W.2d at 126 n.3.

Yarter alleges he is the owner of the property appellees seek to inherit because Keener placed the disputed property in the trust of which he is the beneficiary, and he points to page 2 of Schedule A for this proposition. Our review of the record shows that Yarter is the beneficiary of a trust established by Keener, it is undisputed that a valid trust exists, and the trial court correctly issued a finding that a trust was established.

Appellees, on the other hand, argued that: Yarter did not have a justiciable interest because the trust is testamentary and Keener lacked the necessary testamentary intent to add the disputed property to the trust; page 2 of Schedule A was not signed or attested by two witnesses; the trust was only a "gun trust" meant to allow Yarter to receive only a suppressor; and Keener's house could not have been added by page 2 of Schedule A because page 2 did not comply with the statute of frauds.

The trust in question was established during Keener's lifetime with himself as trustee and Yarter as the beneficiary, and it is therefore an inter vivos trust, not a testamentary trust. *See Glassman*, 347 S.W.3d at 779; *Land*, 426 S.W.2d at 844; *In re Estate of Canales*, 837 S.W.2d at 665. As an inter vivos trust, no testamentary intent was required for its establishment and, because the trust documents did not provide otherwise, Keener was free to add any property in any way he wished. *See* TEX. PROP.

11

CODE ANN. § 112.006; *Land*, 426 S.W.2d at 844; *In re Estate of Canales*, 837 S.W.2d at 665. The trust documents also did not limit the purpose of the trust or state that it was intended to hold only firearm related property. *See* TEX. PROP. CODE ANN. § 112.031 (West, Westlaw through 2017 1st C.S.) (noting that "[a] trust may be created for any purpose that is not illegal"). Thus, appellees' arguments that Yarter lacked a justiciable interest because there was no testamentary intent, no witnesses, and because the trust was not intended to transfer anything more than the suppressor necessarily fail.

As the beneficiary of a trust established by Keener, Yarter is an interested person under the estates code and is the owner of any of Keener's property that was placed in the trust. *See* TEX. EST. CODE. ANN. § 22.018; *Bradley*, 535 S.W.3d at 248; *Estate of York*, 951 S.W.2d at 126; *Hallmark*, 907 S.W.2d at 589; *see also Steele v. Milburn*, No. 10-13-00426-CV, 2015 WL 4864725, *3 (Tex. App.—Waco Aug. 13, 2015, no pet.) (mem. op.) (concluding that decedent's stepson was an interested person because he was named as trust beneficiary in decedent's will). In other words, he has a claim against the property in Keener's estate that appellees seek to inherit. *See* TEX. EST. CODE. ANN. § 22.018; *Bradley*, 535 S.W.3d at 248; *Estate of York*, 951 S.W.2d at 126; *Hallmark*, 907 S.W.2d at 589. And this claim against the property would be affected by appellees' litigation. *See In re Union Carbide*, 273 S.W.3d at 155; *Guaranty Fed.*, 793 S.W.2d at 657; *Jenkins*, 187 S.W.3d at 796–97; *Ghiasinejad*, 109 S.W.3d at 70; *Estate of York*, 951 S.W.2d at 126. Thus, we conclude Yarter established a justiciable interest in the proceedings. *See* TEX. EST. CODE. ANN. § 22.018; *Bradley*, 535 S.W.3d at 248; *Jenkins*, 187 S.W.3d at 797; *Estate of York*, 951 S.W.2d at 126; *Hallmark*, 907 S.W.2d at 589.

However, as previously noted, we will only overturn the trial court's denial of a plea in intervention if there has been an abuse of discretion.[6]  *See Ghiasinejad*, 109 S.W.3d at 70 ("Even if a party has a justiciable interest, . . . the trial court has broad discretion in determining whether his petition in intervention should be struck.").  Here, we note that a fact issue exists as to the overall property in the trust and whether page 2 of Schedule A added any property to the trust.  Appellees' argument for the denial of Yarter's intervention was premised on the idea that the property on page 2 of Schedule A was not added to the trust because there was no testamentary intent and because it did not comply with Texas will statutes.  *See* TEX. EST. CODE ANN. 251.051 (West, Westlaw through 2017 1st C.S.) (providing that a will must be in writing, signed, and attested by two credible witnesses).  Likewise, the county court based its denial of Yarter's intervention on its finding that no property was added to the trust because there was insufficient evidence of Keener's testamentary intent as to page 2 of Schedule A.  Contrary to the trial court's finding and ruling, however, testamentary intent on Keener's part was not required for the disputed property to have been added to the trust.  *See* TEX. PROP. CODE ANN. § 112.006; *Land*, 426 S.W.2d at 844; *In re Estate of Canales*, 837 S.W.2d at 665.  Thus, because no testamentary intent was required, and because property may be added to an existing trust in any manner and at any time, TEX. PROP. CODE ANN. § 112.006, the trial court's decision was made without reference to guiding rules and principles.  Therefore, we conclude that Yarter has established he has a justiciable interest in the proceeding and that the trial court abused its discretion when it denied his plea in intervention.  *See Guaranty Fed.*,

---

[6] We assume, but do not decide, that Yarter must show an abuse of discretion in addition to a justiciable interest.  *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g); *In re Estate of York*, 951 S.W.2d 122, 126 (Tex. App.—Corpus Christi 1997, no writ).

793 S.W.2d at 657; *Zeifman*, 229 S.W.3d at 465–66; *Estate of York*, 951 S.W.2d at 126; *Pennzoil Co.*, 866 S.W.2d at 250.

We sustain Yarter's first issue.[7]

### III.  CONCLUSION

We reverse the county court's denial of Yarter's plea in intervention and remand for further proceedings consistent with this memorandum opinion.

DORI CONTRERAS
Chief Justice

Delivered and filed the
21st day of February, 2019.

---

[7] Because we find Yarter's first issue dispositive, we need not address his second issue.  *See* TEX. R. APP. P. 47.4.